We are convinced of the correctness of the judgment of the lower court, and it is accordingly affirmed.

## MANUEL v. METROPOLITAN LIFE INS. CO.

### No. 895.

Court of Appeal of Louisiana. First Circuit.

Feb. 8, 1932.

A. V. Pavy, of Opelousas, for appellant.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, and Wm. Alex Robertson, of Opelousas, for appellee.

ELLIOTT, J.

Horace Manuel obtained a life insurance policy from the Metropolitan Life Insurance Company of New York for $3,000, the annual premium on which was $74.37. He then obtained from the same company further insurance evidenced by what the parties call a supplemental contract or rider, whereby, in consideration of an additional premium of $5.52, the company agreed to pay him a monthly annuity of $10 for each $1,000 of insurance under the main policy and waive the annual premium thereon, if, as a result of injury or disease occurring and originating after the issuance of the policy, insured should become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit. The policy carries a further supplemental agreement; but it has no bearing on the present controversy.

The monthly annuities to which plaintiff is entitled, if the right thereto has accrued, amounts to $30.

The plaintiff alleges that the defendant has paid him monthly benefits under said policy in the sum of $30, from on or about the month of June, 1924, the required proof of his disability having been submitted to the defendant company, but that after payment of the annuity due for the month of October, 1929, the company, without reason in law, arbitrarily and unreasonably ceased to pay him the annuity provided for. That at the time of said default he was and is now afflicted with pulmonary tuberculosis, affecting both lungs. That he frequently suffers from hyperacidity and general weakness. That during the entire period of benefit he has been and is now under the care of physicians, precluded by said disease from performing any work or engaging in any business for compensation or profit.

That the disease with which he is afflicted is permanent in character and is daily becoming more debilitating.

That he is entitled to judgment for $300, the total of the amount due as annuity from November, 1929, to August, 1930, inclusive, a period of ten months, for reimbursement of premiums paid and the enforcement of the waiver of premiums as stipulated in the policy. That the action of the company in discontinuing the payment of said monthly annuities was unwarranted, unreasonable, and unjust. That he is entitled under the law to double the amount due as annuities and to attorney's fees in such amount as may be fixed by the court.

The defendant for answer admits issuing plaintiff a policy as set up in his petition, and the execution of the supplemental agreement as alleged, and that the said supplemental agreement contains a provision for the payment of monthly annuities and for the waiver of the annual premium on the main policy under certain conditions stated in the answer. Admits the receipt of due proofs that the petitioner, as the result of injury or disease occurring or originating after issuance of said policy, had been totally and permanently disabled, so as to be unable at any time to perform any work or engage in any business for compensation or profit. That it paid the plaintiff annuity up to and including October, 1929, and has refused to pay any benefit since that time, but that said payments were made in error.

It denies that plaintiff has, since November 1, 1929, been unable to perform any work or engage in any business for compensation or profit and alleges that he has for several months prior to November 1, 1929, and continuously since then been performing work and engaging in business for compensation or profit, particularly in that he has throughout said period supervised, managed, and directed a farm of some 300 acres owned and operated by him.

Defendant alleges that plaintiff is able to and has since November 1, 1929, and for some months prior thereto been engaged generally and substantially in all the activities of a farmer.

There was judgment in favor of the plaintiff in the lower court, ordering the defendant to pay to the plaintiff monthly dues in amount $300, as claimed in his petition, together with such further sums as should become due on said account up until the satisfaction of the judgment rendered, and additionally for an equal sum as the total of said annuities which shall be due as a penalty, in the further sum of $75 as attorney's fees and to reimburse the plaintiff the premium paid on the main policy for the year 1930. Defendant has appealed.

The question is whether, as a result of pulmonary consumption occurring and originating after the issuance of the policy in question, the plaintiff has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit.

A witness named Aguillard, near neighbor for twenty-one years and owner of an adjoin-

ing farm, testified that as a matter of habit, he had visited plaintiff two or three times a week for many years. Asked if Mr. Manuel had had active charge of his plantation during the last few years, he said: "For the last six years he has not been able to manage his crop himself, he has had it done by others." Asked where he would find Mr. Manuel when he went there, he said: "Oftener I found him in bed than any where else, when I went to see him on business. I would go and talk to him in his room."

Further asked if Mr. Manuel had, to his knowledge, been in active charge of the operation of his plantation, his answer was: "I know that up to his illness he was in charge of his plantation."

Mr. Aguillard testified that he thrashed the rice on plaintiff's plantation, and that since plaintiff had been sick he had not seen him in his field more than three times. That plaintiff took sick about five or six years ago and looked like a man emaciated.

Mr. Aguillard was evidently plaintiff's close friend and sympathizer, but we note nothing in his answers that indicates that he was biased in giving his testimony.

Seizieme Young, a tenant on plaintiff's plantation about four years, and Adam Anderson, a tenant for five years, both state that Mr. Manuel does no work on his farm; that he stays most of the time in bed. It was testified to by Mr. Young that he makes arrangements for the thrashing of the rice, while Adam Anderson looks after the levees and ditches necessary in the cultivation of rice.

Alexander Amy, friend and near neighbor of the plaintiff for about fifteen years, and who had often visited him at his house during the last four or five years, was asked where he would find Mr. Manuel when he would visit him and his answer was: "I would find him around the house when I did not find him in bed."

Mr. Amy is an insurance agent and works for another insurance company. Being familiar with the procedure required in order to get the benefits stipulated in plaintiff's policy and the plaintiff being illiterate, he assisted him in getting up and forwarding his proofs of disability.

Another neighbor, Mr. Odom, owner of a deep well on a plantation adjoining that of the plaintiff, furnished the water which irrigated the rice on plaintiff's farm. He never saw Mr. Manuel doing any work on his farm, but testifies that on one occasion plaintiff and himself rode on horseback down into plaintiff's field for the purpose of looking at some rice; that they rode their horses in a walk.

Wm. Young, another neighbor for about fifteen years, says that the thrashing of the rice on plaintiff's farm was looked after by one of the tenants, Seizieme Young.

Asked how long Mr. Manuel had been a rice farmer, he said: "I believe he was raised making these kind of crops. Since he has been married he has been making them." This witness had worked on plaintiff's farm and said that Mr. Manuel did not do any of the work; that "he was sitting down in the house."

The plaintiff Manuel, testifying in his own behalf, says that he is forty-five years of age and has a wife and four children. That he owned 325 acres of land on which he lives with his family.

"Q. When were you first under medical treatment? A. Since 1924 I began to visit the doctor regularly."

He further testified that Dr. Garland was his physician and treated him for his lungs. That defendant at first paid him benefits, then quit. That he had not recovered his health and did not see that he was any better. That the doctors said he must stay in bed and not work, and he followed their instructions as near as he could. That his farm is rented out to tenants; that he cultivates it on the share system. Two of the tenants, Seizieme Young and Adam Anderson, look after the thrashing of the rice, the levees, and the ditches. That prior to the time he was taken ill he did the work which Young and Anderson were doing. That he remained in his house and in his room lying down; that he formerly got up at daybreak.

"Q. Prior to the time that you were first taken ill were you in the habit of working on your plantation? A. Yes, I did all the work; planting the rice, cutting the land and feeding my horses."

He further testified that he had not done any manual labor on his farm since 1923.

Plaintiff's testimony is not contradicted as to any matter stated.

A number of other witnesses were called and gave their testimony in the case, but all the witnesses are in harmony as to the facts about which testimony was given.

The evidence is to the effect that plaintiff has occasionally, since he was taken sick, ridden on horseback down into his field to look at the rice, and has taken his children to children's dances in the neighborhood. He makes a habit of driving his automobile to Eunice, some four or five miles distant from his plantation on a dirt road, going on an average once a week, at which times he talks with the officers of the bank about business matters. He sometimes walks about his house and yard, and holds conferences in his room with his tenants concerning the crops of rice, cotton, and corn grown on his place. He has seven tenant families on his place.

The evidence shows that it is necessary at times in the cultivation of a rice crop for the party or parties making the crop to go out

into the fields during heavy rains in order to look after the levees and keep open the ditches. It is sometimes necessary to do this at night, and to remain up and look after them all night. It appears that thrashing rice creates a dust which is harmful to one in the condition of the plaintiff.

Dr. Garland was the first physician to treat plaintiff.

Dr. Garland examined plaintiff at the time he applied for the policy in question. This policy bears date September 11, 1922, and says that he was free from disease at that time.

Dr. Garland further says: "In 1924, I think, was the first time I saw him, on an average I think, once a week, for several months. He had a chronic condition, and in those cases you do not see them very often. I think he stayed in bed two or three months. But I referred him to Dr. Elliott for an examination." In further statements he says that his treatment of Mr. Manuel began in 1924, and he may have seen him before then, and has continued up until the present time. That plaintiff's principal complaint when he started treating him was extreme weakness, indigestion, and he had a chronic cough and slight temperature at times. That pictures made showed fibrosis throughout both lungs, principally at the upper portion of the lungs. He prescribed rest in bed, forced feeding, and tonic treatment, something for his stomach. By rest, he meant that Mr. Manuel must not exert himself and must abstain from physical labor; that labor would aggravate his condition and imperil his life. That on rainy damp days he must stay in bed. That work on a rice farm, such as keeping open the ditches and work about the thrasher, would aggravate his condition. That plaintiff's tuberculosis had been arrested; that tuberculosis may be arrested but is never cured, and it may, after being arrested, become virulent again, as a result of physical exertion or exposure.

Questioned by defendant, he stated that he had answered questionnaires concerning plaintiff's condition in 1928, in which he had stated that plaintiff's disability was not permanent. Asked in the questionnaire to approximate the day when work could be resumed, he answered, in January, 1929. He answered a similar questionnaire in August, 1929, and in doing so stated that plaintiff's disability was not permanent. Asked in the questionnaire when he might resume labor, he stated that he might resume labor in one year.

Asked to explain what he meant by these answers, he said that he thought at the time that a year's rest would enable plaintiff to carry on the business of his occupation, that of supervising his farm; but that plaintiff's condition had not changed much, that he

could see. He said: "He is still very weak; he did improve under the first confinement. When he stayed perfectly still and sat in the house his appetite and stomach became better." That plaintiff's condition did not change however as he anticipated at the time of answering the questionnaires.

The plaintiff consulted Dr. Robert Young, who also gave his testimony in the case. We are unable to ascertain from the testimony of Dr. Young and the plaintiff exactly when this was done, but it seems to be probable that it was about a year before the trial. Dr. Young testified that at the time plaintiff called on him, he (plaintiff) was suffering with chronic pulmonary tuberculosis in both lungs. He did not consider him in the last stages of the disease, but his condition was far from good. His disease had been arrested and was not of the virulent type; but it could become much more active. That plaintiff must be very careful the balance of his life, else he will not live long. That plaintiff cannot perform the work that a man running a rice plantation would necessarily have to do and do justice to himself; that if he did, he would not live long.

"Q. Would this man be compelled to remain inside of his house or in bed on a wet and rainy day? A. He should be in bed on good days; that is his only chance. He should have lots of rest. I mean, I am speaking from what experience has taught and shown in cases of this kind.

"Q. Do you, in your opinion, consider this man totally and permanently disabled from performing manual labor? A. I think so; so far as one can judge in cases of this kind. I do not think he could or should get up in the morning early, nor should he be out on bad days, nor should he be around a thrasher, nor could he attend to the other numerous duties about a plantation, without causing great physical harm to himself."

Dr. Young repeated, without objection, what the plaintiff told him about some X-ray pictures which another physician had made and what he said other physicians had stated to him on the subject of his condition. The defendant urges that this testimony ought not to be considered. The testimony is not as objectionable as defendant contends. It had reference to the state of plaintiff's health under investigation as to his condition. It was not substantive proof, but supporting grounds for the diagnosis and treatment prescribed by the doctor giving his testimony.

Several other physicians, Dr. Lewis, Dr. Lionel Bienvenu, and Dr. Oscar Bienvenu, examined plaintiff; some, just before, others about a month before, the trial. They all found him with a case of arrested pulmonary tuberculosis in both lungs, with fibrosis.

They all testified that plaintiff should not perform manual labor nor expose himself in bad weather, but that quiet and rest was necessary in order to prevent a recurrence of his arrested condition. One of them gave it as his opinion that plaintiff could superintend his farm by looking over it; stated that he did not think doing so would do him any more harm than walking about the house. But his testimony was like that of the others. He stated that his treatment of patients affected with pulmonary tuberculosis was to have them take rest as long as they could and to not get out early in the morning. He gave it as his opinion that plaintiff was in no condition to look after levees and ditches during periods of rain, expressed the opinion that exertion would be harmful, and that there was a potential danger of a flare-up, and that the less plaintiff worked the better off he would be.

■ Defendant contends that plaintiff, no matter his condition of health, is engaged in active work as a farmer, supervising his farm work and plantation business; that he has been doing so, except for a few months, since the year 1924. That he is now engaged in that work and is earning compensation and receiving an income and profit from his farm as a result of his efforts. That being engaged in a business for compensation and profit, he is not entitled to the annuities stipulated in the policy.

We differ with the defendant on this subject. In plaintiff's application for the policy he stated that he was a rice farmer; that his occupation consisted in raising rice and cotton. In answer to question by whom employed, his answer was "For self"; that his former occupation had been that of a farmer. Plaintiff's invalid condition made it necessary for him to have cultivated his farm by means of tenants who work for shares of the crop which they cultivate themselves.

Sitting in his room consulting and advising with his tenants concerning the planting, cultivating, harvesting, and marketing of his crops, leaving it to them to do all the work, applied to the present case, is not "performing any work or engaging in any business for compensation or profit," cutting off plaintiff from the stipulated benefits.

Neither do his weekly trips to Eunice, driving his own automobile, conferences with the officials of the bank concerning his financial affairs, nor the taking of his children to children's dances in the neighborhood, have such an effect.

■ The defendant admits that plaintiff made due proof of his disability and that it made payments of the monthly annuities, under the policy, pursuant to the proof furnished, for about three years. It contends that these payments were made in error, but the burden of proof in the matter of the alleged error is on the defendant. And to our mind the proof introduced on the present trial supports the proof first made and negatives the existence of error.

It appears to us that the provision, "to be unable at any time to perform any work or engage in any business for compensation or profit," does not have reference to mere conferences and advice, such as took place between the plaintiff and his tenants concerning the cultivation of a crop by the tenants, and the plaintiff receiving a share of the crop, because of his ownership of the land.

Plaintiff's share of such a crop is not compensation or profit, earned as the result of any work or business engaged in by the plaintiff, but must be regarded as the fruit of the immovable owned by him at the time the policy was obtained. See the provision of the Civil Code, art. 499.

It seems reasonable that the "monthly annuity" provided for in the contract is not to be defeated by income resulting from crops cultivated by tenants on shares, the right to which was vested in the plaintiff, previous to and without reference to the policy, but contemplated monthly annuity to be paid him in the contingency stated, independent of the same, otherwise the policy would not bring to the financial assistance of the plaintiff anything that he did not have at the time of taking out the insurance.

■ It seems to us that the defendant contends for a construction and enforcement that would render the policy provision in question of no practical benefit to an insured owning a farm and in the condition of the plaintiff. A policy stipulation that would so seldom become operative that it would be about as well as if left out of the policy altogether is not to be supposed came within the contemplation of the parties. In this connection we have given consideration to the provision which reads: "Without prejudice to any other cause of disability, the entire and irrecoverable loss of the sight of both eyes, or the severance of both hands above the wrists, or of both feet above the ankles, or of one entire hand and one entire foot, will be considered as total and permanent disability within the meaning of this provision." This illustration does not weaken plaintiff's case, because his total and permanent disability is established by all the evidence on the subject. Defendant states in its brief that it does not contend for an interpretation and enforcement of the policy that would be unreasonable in its application.

The evidence satisfactorily shows that up until the year 1924, when plaintiff was taken with his present pulmonary trouble, he personally and actively superintended his farm. He was up and doing early and late, working and seeing that others employed thereon per-

formed their work. The testimony abundantly shows his continued and uninterrupted condition of total and permanent disability, since the ailment in question came into existence.

■ The defendant urges that the additional premium of $5.52 is so small that it indicates that the risk did not contemplate such a long and extensive undertaking. The provision of the policy providing what the defendant will do in case the insured shows himself to be totally and permanently disabled is plain, and under the articles of the Civil Code, 1901 and 1945, the legal contract of the parties is the law of the case.

Defendant supports its argument with the citation of many decisions from the courts of other states, to none of which we have access, but the excerpts copied into its brief indicate that in some of them the disability was very different from the state of health, due to the arrested consumption in the plaintiff, which must be constantly kept in a state of arrest by abstaining from manual work and exposure.

The citation from R. C. L. Vol. 14, subject, Insurance, § 491, pp. 1315 and 1316, part of which is cited in the brief of the plaintiff, is to our mind the best statement of the rules which should govern in the construction of the policy in question:

"Accident policies usually provide for periodical indemnity for 'total disability,' or what is usually considered its equivalent, for injuries disabling the insured from transacting any of the duties pertaining to his occupation. Total disability is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case. It must depend largely upon the occupation and employment and the capabilities of the person injured.

"The rule prevailing in most jurisdictions is that the 'total disability' contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in possession of his mental faculties he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the 'total disability' contemplated by the agreement is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner. If the prosecution of the business requires the insured to do several acts and perform several kinds of labor, and he is able to do and perform one only, he is as effectually disabled from performing his business as if he were unable to do anything required to be done, and while remaining in that condition he suffers loss of time in the business of his occupation.

"Nor does the provision contemplate absolute physical inability to transact any kind of business pertaining to one's occupation, but it is sufficient if his injuries are such that common care and prudence require him to desist from transacting any such business in order to effect a cure. And the fact that the insured may be able for an inappreciable period of time to perform his accustomed labor does not prevent a recovery, where he is actually totally disabled from following any avocation. The provision does apply, however, and prevent a recovery where the insured is able to do practically all of his business, though his efficiency is somewhat impaired."

The section continues and further statements are made along the same general subject line.

Applying this rule of construction to the policy in question, the plaintiff is entitled to recover the stipulated monthly annuities as was found in the lower court, but not the penalties which the plaintiff claims.

■■ The lower court condemned the defendant to pay double the annuity due under the policy and $75 attorney's fees, enforcing against the defendant the provisions of Act No. 310 of 1910, §§ 2 and 3.

The defendant argues that this act does not apply to the policy sued on.

The act applies in express terms to insurance on account of health and sickness. The supplemental contract sued on has reference to disabilities of that nature, rendering the policy amenable to the law in question, but the penalties are not to be inflicted, except when it appears that payment has been withheld "without just and reasonable grounds, such as would put a reasonable and prudent business man on his guard."

The supplemental contract sued on contains a stipulation to the effect that: "Notwithstanding proof of disability may have been accepted by the company as satisfactory, the Insured shall at any time, but not oftener than once a year, on demand from the company, furnish due proof of the continuance of such disability; and if the Insured should fail to furnish such proof, or if the Insured is able to perform any work or engage in any business whatsoever for compensation or profit, no further premium will be waived or allowed to accumulate, as an indebtedness against the policy, nor will any further monthly annuity payments be made."

There is also printed on the policy, under the heading Notice to Policy Holders:

"The company is glad to pay and there is no necessity for help or alleged influence in collecting.

"It is not necessary to employ an attorney or any other person to collect the insurance under the policy, or to secure any of the benefits it provides."

The evidence indicates that the defendant stopped paying the annuity without calling on plaintiff for proof of the continuance of his disability; refused to pay further and demanded the premium of $74.37 due on the main policy.

■ Defendant urges as a mitigating circumstance the answers of Dr. Garland to its questionnaires of 1928 and 1929. In the questionnaire of 1928 he stated that plaintiff's disability was not permanent and gave it as his opinion that he could resume work in 1929. In the questionnaire of 1929 he again stated that plaintiff's disability was not permanent and that he might resume labor in one year.

In the case Massachusetts Protective Ass'n v. Ferguson, 168 La. 271, 121 So. 863, 866, the Supreme Court held that: "Penalties in civil actions are not favored by the courts, and should not be imposed except in cases that are clear and free from doubt."

Dr. Garland testified on the trial that plaintiff's condition did not improve as he expected, but it was not shown that he communicated that fact to the defendant and informed it as to the continuance of the disability, before the trial of the case.

Under the circumstances, while we find that the defendant owes the annuities as held in the lower court, we do not think the penalty provided for by the Act in question should be imposed.

■ Defendant contends that although the plaintiff only prays for the monthly annuities accrued for the months of November, 1929, to August, 1930, inclusive, and for all further monthly annuities accruing and becoming due up to the date of judgment, that the court condemned it to pay "up until the satisfaction of the judgment," which was beyond the prayer of the petition.

The petition of the plaintiff concludes by praying for all orders and decrees necessary in the premises and for general relief.

Section 5 of Act No. 310 of 1910 provides that it is the duty of the insurance company thereafter to make payment every 30 days to the insured, during that part of the period of his disability covered by said policy or contract of insurance: "The law thus requires defendant to pay the monthly annuities during the period of disability." We do not see that the term mentioned is objectionable, understood in connection with the language of the law on the subject; but the further part of the judgment, which condemns defendant, "additionally for an equal sum as the total of said annuities which shall be due and paid as a penalty," will not be allowed.

For these reasons the judgment appealed from is amended so as to require the defendant Metropolitan Life Insurance Company to pay to the plaintiff Horace Manuel monthly annuities at the rate of $30 per month with legal interest on each past-due installment, from the time it was due until paid, commencing with the month of November, 1929, and continuing each month thereafter until August, 1930, and thence monthly thereafter as long as plaintiff's present total disability shall last, all as provided for on that subject in the supplemental agreement in question; and, in addition, to reimburse to the plaintiff the premium paid on the policy during the year 1930. And as thus amended the judgment appealed from is affirmed. In all other respects it is annulled, avoided, and set aside.

It is further ordered that the defendant and appellant pay the cost in both courts.