ROGERS, Justice.
 

 Plaintiff sued for double indemnity and attorney fees on a group insurance policy for $1,020.80, payable in twenty monthly installments of $51.04 each, in the event the insured “became totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value.” The policy further provided that payment of the monthly disability-installments will be made “upon receipt of the proof df such disability before the expiration of one year from the date of its commencement.”
 

 Defendant denied liability on the ground that plaintiff’s right of recovery is barred by his failure to furnish proof of disability within one year from the time the disability commenced, and on the further ground that plaintiff is not totally and permanently dis
 
 *447
 
 abled from engaging in any occupation or performing any work for compensation of financial value.
 

 The court below gave plaintiff judgment for the face of the policy payable according to its terms. From this judgment defendant has appealed and plaintiff has answered the appeal, praying that the judgment be increased by awarding him the statutory penalties and interest.
 

 Plaintiff was employed as a manual laborer by the Newport Company, of DeQuiney, La. While so employed on January 29, 1931, a trestle turned over and fell on him, injuring hig back, right hip, and chest. Plaintiff consulted and was treated by local physicians, until June, 1931, when he was examined by a New Orleans physician, who advised plaintiff that he did not consider his injuries total or permanent and suggested to plaintiff that his condition would improve if he returned to work. Plaintiff returned to DeQuiney and attempted to work, but was unable to do so. Shortly thereafter he learned that his disability would be • permanent. This was in July, 1931. On April 25, 1932, plaintiff advised defendant in writing that he was totally and permanently disabled and claimed full compensation therefor under the terms of the policy. Defendant was furnished with numerous physicians’ reports showing the extent of plaintiff’s injuries, but defendant refused to pay plaintiff any of the benefits, stipulated in the policy, claiming that plaintiff was not permanently and totally disabled.
 

 Defendant’s contention, apparently advanced for the first time as one of the defenses' to this suit, is, that plaintiff’s action is barred because he failed to give notice of his injury as required by his policy. Defendant’s theory appears to be that the time within which to give such notice began to run from the date the accident occurred. But this is not the agreement between the parties. The policy provides that: .“In the event any employee * * * becomes totally and permanently disabled by bodily injury or disease, * * * upon receipt of due proof of such disability before the expiration of one year from the
 
 date of its commencement,
 
 the Society will * * * pay equal Monthly Disability-installments. * * * ” (Writers italics.)
 

 Under the express terms of the insurance contract no liability attaches to defendant unless plaintiff, as the result of bodily injury or disease, becomes totally and permanently disabled. And the year within which notice must be given runs from the date of the
 
 commencement
 
 of the permanent and total disability, not from the date the accident actually occurs. It would be a wholly unreasonable construction to place upon these conditions of the policy to hold that plaintiff was obliged to give notice of an accident which he could not know would produce permanent and total disability, and for which he had no reason to believe any liability would ever attach under the contract
 

 The record discloses that plaintiff’s injury consists of a fracture of the fourth lumbar vertebra. As a result of the injury, a wedge shaped deformity has developed in plaintiff’s spinal column, which is displaced laterally. Because of pressure on nerves of the spinal cord, plaintiff suffers considerable
 
 *449
 
 pain, and has acquired a decided limp as a result of his suffering.
 

 As late as June, 1931, the physician who examined plaintiff in New Orleans, did not consider his disability as permanent or total. He advised plaintiff to return to work, which plaintiff attempted unsuccessfully to do. The uncontradicted testimony of plaintiff is, that he only learned his disability was permanent in July, 1931, shortly after he had attempted to return to work. Plaintiff’s testimony is corroborated by the medical testimony in the record which indicates that the “wedging” of a vertebra is a gradual process and does not ordinarily develop until about five or six months after an injury occurs.
 

 From all of which we have reached the conclusion that the defendant insurance company was fully notified and furnished with ample proof of the accident and plaintiff’s total and permanent disability within less than one year from the date of the commencement of such disability.
 

 Defendant further resists liability on the ground the measure provided by the insurance contract to determine ¡plaihtiff’s disability or incapacity is his inability to engage in any occupation or to perform any work for compensation of financial value. And defendant argues that even if plaintiff is unable to perform hard manual labor, he is capable of doing any kind of light work that would not place an undue strain upon his injured back. Defendant refers to a number of authorities as supporting its position.
 

 The record discloses that plaintiff is a white man fifty years old, with little schooling, who has earned his living wholly by manual labor. As the result of his injury he suffers pain from any physical exertion, walking, standing erect, and even while sitting down. And his pain must necessarily increase in proportion to the physical efforts he is required to put forth. In these circumstances, it would seem to be clear that plaintiff’s injury is such as to require him, in the exercise of ordinary prudence, to refrain from the exactions of any fixed employment. And it would be a wholly unreasonable construction to hold that plaintiff’s disability is not such as to bring his case within the meaning of tlie insurance contract. Such a construction, if adopted and enforced, would render an insurance policy of no practical benefit to an illiterate insured who earns his livelihood by hard manual labor and is in the physical condition that the plaintiff finds himself to be as the result of the accident. As was well said by the Court of Appeal, First Circuit, in Manuel v. Metropolitan Life Ins. Co., 139 So. 548, 552 (writ refused in No. 31914 of this court, on June 20, 1932): “A policy stipulation -that would so seldom become operative that it would be about as well as if left out of the policy altogether is not to be supposed came within the contemplation of the parties.”
 

 [fl We think that in most, if not all the authorities cited by defendant, the facts were essentially different from the facts of this case. But be that as it may, we think that the true rule governing cases of this kind is stated In 7 Couch on Insurance, § 1670, p. 5769, as follows, viz.:
 

 “ * * * It may be said, generally speaking the provisions in life, health and accident insurance policies for indemnity in case the
 
 *451
 
 insured becomes totally, permanently or wholly disabled, etc., do not require that he shall be rendered absolutely helpless, but, rather, merely requires such disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. At least such a rule has been in substance adhered to, where the policies required that he be totally disabled from transacting any and every hind of business. * * * ”
 

 The rule is stated in 14 R. C. L., § 491, p. 1315, as follows, viz.:
 

 “The rule prevailing in most jurisdictions is that the total .disability contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result -only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting same part of his business', whatever it may be, although he is incapable of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the ‘total disability’ contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured’s business or occupation in substantially his customary and usual manner.”
 

 The rule thus announced is supjwrted'by the weight of authority in England as well as in this country. See Order of United Commercial Travelers v. Barnes, 72 Kan. 293, 80 P. 1020, 82 P. 1099, 7 Ann. Cas. 815; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 857.
 

 The rule was followed by the Court of Appeal, First Circuit, in the case of Manuel v. Metropolitan Life Ins. Co., to which we have hereinabove referred. There the court held, in interpreting in a health and accident policy the provision “totally and permanently disabled * * * to perform any work or engage in any business for compensation or profit,” that an; insured permanently disabled by disease was within the provision, notwithstanding that, sitting in his room, he consulted and advised with his tenants concerning crops, drove his automobile about four or five miles to town once a week to confer with bank officials concerning his financial affairs, and took his children to neighborhood dances.
 

 And the Supreme Court of Mississippi, in the case of Equitable Life Assurance Society v. Serio, 155 Miss. 515, 124 So. 485, following the general rule, in construing a provision in a policy similar to the one under review here, held that where the insured became afflicted with tuberculosis he was “totally disabled” within the meaning of the contract, regardless of the fact that he was able to assist his family to a certain extent in operating a small country store.
 

 Plaintiff, in his answer to the appeal, prays that defendant be condemned to pay double the indemnity due under the policy and $750 as attorney fees. Plaintiff’s demand in this respect is predicated on sections 2 and 3 of Act No. 310 of 1910. The trial judge thought the defense set up was reasonable, and he refused to allow the statutory penalties. We find no error in this. Penalties in civil actions are not favored by the courts
 
 *453
 
 and should not he imposed except in cases that are clear and free from doubt. Massachusetts Protective Ass’n v. Ferguson, 168 La. 271, 121 So. 863.
 

 Plaintiff prays, alternatively, that the judgment be amended by awarding legal interest on each indemnity installment allowed therein. But plaintiff did not claim or pray for interest in bis original petition. Hence, interest cannot be allowed by the judgment. Code Prac., arts. 157, 553; Alcolea v. Smith, 150 La. 482, 90 So. 769, 24 A. L. R. 815; Merchants’ & Farmers’ Bank & Trust Co. v. Hammond Motors Co., 164 La. 57, 113 So. 763; Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742. And the prayer for the statutory penalties does not warrant the allowance of interest by a decree of the court.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 ST. PAUL, J., absent