## PHILLIPS v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 1337.

Court of Appeal of Louisiana. First Circuit. June 11, 1934.

On Application for Rehearing, June 30, 1934.

**488**

Montgomery & Montgomery, of New Orleans, and H. W. Hill, of Alexandria, for appellant.

Woosley & Cavanaugh, of Leesville, for appellee.

LE BLANC, Judge.

On September 24, 1931, plaintiff, John W. Phillips, took out a policy of insurance with the defendant, Mutual Life Insurance Company of New York. For an additional premium, the policy carried a total and "presumably" permanent disability clause.

Plaintiff paid all premiums that were due, and, on October 1, 1932, during the life of the policy, sustained a hernia while engaged in his usual avocation as a farmer, and as a result thereof he claims to have become totally and presumably permanently disabled and is incapable of engaging in any occupation that is profitable, or remunerative.

The clause in the policy which relates to benefits in the event of total and permanent disability, reads as follows:

"Benefits if no Premium is in default.—If, while no premium on this Policy is in default, due proof is received at the Home Office of the Company, (1) that the Insured is totally disabled as a result of disease or of bodily injury which was not self-inflicted, so as to be incapable of engaging in any occupation for remuneration or profit, (2) that such total disability has continued without interruption for a period of at least four months (total disability of such duration being presumed to be permanent during its continuance), and (3) that such disability commenced before the anniversary of the date of the Policy on which the age of the Insured at nearest birthday is sixty years, the Company, during the continuance of such total disability, will

"(a) Waive payment of each premium under this Policy which shall become due during such total disability, and refund each premium paid which became due during such total disability; but no premium shall be refunded the due date of which occurred more than one year before the receipt at said Home Office of written notice of claim for Disability Benefits; and

"(b) Pay to the Insured a monthly income of the amount stated on the first page hereof for each completed month of such total disability, except that no income payments shall be made (1) for the first three months of such total disability, or (2) for any month beginning more than one year before the date of receipt at said Home Office of written notice of claim for Disability Benefits."

The amount of monthly income payable for total disability, as specified in the policy, is $10.

Alleging facts that would bring his claim within the terms of the foregoing disability clause, the plaintiff prays for judgment against the defendant in the sum of $10 per month beginning with October 1, 1932, the date of his alleged accident, making the full sum of $100 due up to the time of the filing of his suit, with legal interest, and for the sum of $10 per month thereafter during the total period of disability. Alleging further that more than thirty days have elapsed since the filing of his proof of claim, that defendant has subjected itself to the penalties prescribed by law, he prays for double indemnity in the lump sum demanded of $100 up to the time of the filing of his suit and $250 as attorney's fees.

The answer of the defendant may be classed as a general denial, although as a result of the trial of the case it is now conceded by counsel for defendant that plaintiff sustained a hernia as alleged by him on October 1, 1932, which was during the life of the policy. The principal defense seems to be that the hernia has not rendered plaintiff totally and permanently disabled under the provisions of the policy which requires that he be incapable of engaging in any occupation for profit or remuneration.

The court below rendered judgment in favor of plaintiff granting him his demands in full as prayed for, and in addition thereto fixing the fees of the experts who testified in his behalf.

The defendant has appealed and assigns as errors in the judgment of the district court:

(1) The holding that plaintiff was totally disabled and incapable of engaging in any work for remuneration or profit.

(2) The award of disability benefits from October 1, 1932, even if plaintiff is entitled to any benefits at all, as the policy distinctly provides that no payments of income shall be made for the first three months of disability.

(3) The awarding of penalties and attorney's fees.

(4) The award of too large an amount of attorney's fees if any at all are due.

Plaintiff testified that on October 1, 1932, he was working in his crib, and while lifting a sack of oats which he wanted to empty into a barrel, his foot slipped from under him and he fell over the barrel. The strain caused him to rupture himself, and he has been

suffering with hernia ever since. Ben Davis, a witness sworn on his behalf, testifies that he was in the lot in which the crib is situated, that he heard plaintiff make an outcry, and saw him come out of the crib holding his side. Right there and then he told him that he had ruptured himself, and how it had happened. Upon discovering that he was so hurt, plaintiff called on Dr. R. Strother and was subsequently examined by Drs. M. V. Hargrove and Brown Word. All three doctors testify without hesitancy that plaintiff is suffering with an inguinal hernia on the left side. None of this testimony is contradicted, and it may be accepted as an established fact, therefore, that plaintiff has sustained a bodily injury, not self-inflicted, within the meaning of that part of the accident clause in the policy he holds. The important question which next arises is whether as a result thereof he is totally disabled so "as to be incapable of engaging in any occupation for remuneration or profit."

■ The testimony shows that plaintiff, who is a man about fifty-three or four years of age, was engaged in the farming business, renting a few acres of land on which he raised crops of cotton, corn, and peanuts. After his injury and during the year 1933, plaintiff, with some help, was able to make a cotton and corn crop, and it is because he was seen to do some plowing himself, that it is so strongly urged by defendant that he is not totally disabled so as to be incapable of doing work for profit or remuneration. Plaintiff himself does not deny that he occasionally did a little plowing at times, but that when he did he was in "misery, suffering death to do it," and apparently he did it because of absolute necessity. Mr. Davis, the witness we have already referred to, states that plaintiff was hardly able to do anything at all; that he plowed some, but if he did so for half a day he would have to lay up for a day and a half afterwards, sitting on his porch with his feet propped up on the bannister. Mr. Thomas Meadows, another witness for plaintiff, and one of those who helped him in his work, states that when he plowed he was two or three times as long as he should have been in doing it, and, at that, could not do more than two or three hours of it a day.

The testimony of all three doctors who examined the plaintiff can leave but little doubt that he is totally incapacitated from doing hard manual labor, and Dr. Hargrove is firmly of the opinion that when he attempts to do any such work in his present condition he is continually in danger of his life. The danger, he explains, is that while he is working the hernia might force itself down through the tissues and cause a strangulation at any time.

With such facts before us, we think that the plaintiff's case comes clearly within the ruling of the Supreme Court of this state in the very recent case of Crowe v. Equitable Life Assurance Society of United States, 179 La. 444, 154 So. 52. In a syllabus from that decision, we read that: "Provisions in life policies for indemnity in case insured becomes 'totally and permanently disabled' do not require that he shall be rendered absolutely helpless, but merely require such disability as renders him unable to perform the substantial and material acts of his occupation in usual and customary way."

The language quoted from the syllabus reflects the finding in the body of the opinion where it appears that the interpretation adopted by the court was taken from such authorities as Couch on Insurance, 7 Couch, p. 5769, par. 1670, and Ruling Case Law, vol. 14, p. 1315, § 491. The same authority had been followed by this court in the case of Manuel v. Metropolitan Life Insurance Co., 139 So. 548.

Under the facts in this case it can hardly be contended that the plaintiff in his present condition could be held capable of performing the substantial duties and the material acts of his occupation as a farmer in the usual and customary manner in which these are performed, as certainly it is not usual or customary for a farmer to have to work in "misery-suffering death," or in constant fear of losing his life from a hernia strangulation. Neither do we think it could be said that it is customary with farmers for them to do their work plowing only an hour or two a day, and then having to lay off two days to recuperate from the pain and suffering caused by these few short hours of labor. Again, we do not think that it is usual and customary for a farmer to have to depend on neighborly and friendly assistance in carrying on the principal work on his farm. All of these considerations convince us that the plaintiff's is a case of total and permanent disability coming within the meaning of and the terms of provisions of his policy as construed in the authorities cited.

■ We are of the opinion that defendant has correctly pointed out an error in the judgment appealed from with regard to the date from which the payment of monthly income became due. Under paragraph (b) section (1) of the disability clause herein quoted, it is

clear that the contract provides that no income payments shall be made for the first three months of total disability. This is a matter which the parties had the right to regulate by the terms of their contract, and it is not controlled by any statutory provisions. See Kiblinger v. American National Insurance Co., 171 La. 560, 131 So. 671. Plaintiff in this case sustained the injury which produced his disability on October 1, 1932, and he could therefore only demand payment of monthly income three months after that date, or on January 1, 1933. The judgment of the lower court which awarded him payments beginning October 1, 1932, is therefore in error and will have to be amended in that respect.

■ The defendant's next assignment of error in the judgment appealed from is with regard to the penalties therein awarded plaintiff. The penalties demanded by the plaintiff are provided for by Act No. 310 of 1910, which prescribed that insurance companies which issue accident policies like the one sued on herein shall not delay payment of a claim thereunder for a longer period than thirty days from due notice and proof of disability, "without just and reasonable grounds such as to put a reasonable and prudent business man on his guard." (Section 2.) Section 1 of the statute provides for proof "by the attending physician, in the form required by the terms of such policy or contract of insurance, informing the company of such * * * accident, entitling the assured to payment under the terms of such policy or contract." The penalty provided by the law is a sum that is double the amount due under the terms of the policy, during the period of delay, with attorney's fees. Plaintiff submitted proof by his attending physician, Dr. R. Strother, on the form furnished by the insurance company, on February 18, 1933. He also submitted a similar form of report made out by Dr. M. V. Hargrove, whom he refers to as his consulting physician. This report is dated February 27, 1933. His own statement of disability to present his claim is dated March 9, 1933. The first investigation made by the insurance company was not until about June 8, 1933, according to the testimony of Mr. Ponder, the investigator. He states that it was about that time he saw plaintiff at work, plowing in his field. It was on his report, we assume, that the company concluded that it had "just and reasonable grounds" to decline payment which it did by letter addressed to the assured, dated June 27, 1933. Between the date of the filing of plaintiff's claim and the proof submitted by his attending physician and the date of the investigation, a period of more than three months had elapsed, and a further period of three weeks intervened before payment of his claim was finally declined. Had Ponder made his investigation and his report within the thirty-day period from the date of the filing of notice and proof of claim, it may well be that the company would have had "a just and reasonable ground" to refuse payment. But having waited that long, we do not see how it can escape the penalty provided under the statute.

■ The prayer of plaintiff's petition for the statutory penalty is for the stated sum of $100, "or double the amount due under said policy at the time of the filing of the suit. * * *" The statute provides, as the penalty, double the amount due under the policy, during the period of delay. But of course, in this case, plaintiff will have to be limited to the amount demanded in the prayer of his petition. As we have concluded to amend the judgment by eliminating payment for the first three months of disability, we find that the amount due plaintiff up to the time of the filing of the suit, September 2, 1933, is for eight months at $10 per month, or the sum of $80. As a penalty therefore he is only entitled, under his petition, to recover that amount. In addition, of course he is entitled to attorney's fees. The district judge allowed him the full amount demanded by him, which we believe is a bit excessive, and have decided to reduce to the sum of $200.

It is, for the foregoing reasons, therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by reducing the original award from the sum of $100 to the sum of $80; also by reducing the amount awarded as a penalty from the sum of $100 to the sum of $80; and by further reducing the award as attorney's fees from the sum of $250 to the sum of $200, and that in all other respects the said judgment be affirmed.

### On Application for Rehearing.

PER CURIAM.

Further consideration of this case on application for rehearing has convinced us that the award of $200 for attorney's fees as a penalty is a bit excessive, and we have decided to reduce the same to the sum of $125.

We do not consider it necessary to grant a rehearing to amend the decree in this respect and will do so on the application as

presented, reserving the right to both parties to file another application, should they so desire.

In other respects the present application for rehearing is refused.

For these reasons it is therefore ordered, adjudged, and decreed that the decree herein rendered be amended by reducing the amount awarded as attorney's fees from the sum of $200 to the sum of $125.

It is further ordered that the present application for rehearing be otherwise refused, and the right is hereby reserved to both the appellant and the appellee to file another application should either desire to do so.