99 So.2d 122

Samuel A. WELLBORN, Jr.

v.

BANKERS LIFE AND CASUALTY COMPANY.

No. 43278.

Jan. 6, 1958.

Myers, Gatti & Egan, Shreveport, for plaintiff-appellant.

Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for defendant-appellee.

SIMON, Justice.

Samuel A. Wellborn, Jr. instituted suit against the Bankers Life and Casualty Company to enforce the payment of benefits allegedly due under two policies of insurance issued by the defendant to plaintiff on May 12, 1954. Both policies bear the number 54–330–933. One is designated as "Preferred Family Group Hospital Policy" and provides indemnity against loss for expenses actually incurred for hospitalization and surgery caused by accidental bodily injuries. The other policy is designated "Bankers Four Star Policy" and provides benefits for loss of life, limb, sight or time by accidental bodily injuries.

Under the Preferred Family Group Hospital Policy plaintiff claimed indemnity for the hospital and surgical expenses in the aggregate sum of $312.

Under the Bankers Four Star Policy plaintiff claimed indemnity in the sum of $200 per month for a period of eight months from July 9, 1954, the date of injury, as a result of his inability to perform his regular and customary duties as an

iron construction worker. The indemnity claimed under both policies totals $1,912.

Plaintiff also claimed double indemnity and reasonable attorney's fees as penalties provided for under LSA–R.S. 22:657, 658 for the alleged arbitrary and capricious refusal by defendant to pay the benefits as called for in said policies.

Defendant denied liability and averred the cancellation of said policies prior to the disability for which benefits are herein claimed. The trial court resolved the primary issue as to the legal effect of the said cancellation to be in favor of plaintiff awarding him the sum of $900 under the Bankers Life and Casualty Company policy and the sum of $225 under the Four Star policy with five percent interest per annum from judicial demand until paid. The demand for penalties and attorney's fees was denied. Plaintiff appealed[1] and thereby seeks an increase in said award to the amount originally sued for, plus fees and penalties. The defendant answered the appeal and prays for its reversal and a denial of plaintiff's demands.

A chronological order of pertinent events is as follows: On July 9, 1954 plaintiff accidently received an injury to his back while in the scope and course of his employment as an iron construction worker

[1.] Originally this appeal was perfected and lodged in the Court of Appeal, Second Circuit, which court upon examination of the record found the amount in dispute to be in excess of $2,000 and in accordance with the provisions of LSA–R.S. 13:4441, 13:4442 transferred the said appeal to this Court.

for the International Paper Company of Springhill, Louisiana. He received immediate medical attention from Dr. W. R. Garrett at Springhill, Louisiana, but continued working until July 30, 1954. On July 31, 1954 Dr. S. J. Macpherson examined plaintiff at the North Louisiana Sanitarium in Shreveport and ordered him hospitalized from August 2, 1954 until August 7, 1954, following which plaintiff was confined to his home until September 7, 1954. He returned to his employment and was engaged from September 7, 1954 to October 16, 1954 performing duties of a lighter and different nature than his regular and customary work, which the insurer recognized and acknowledged to be purely on a trial basis as prescribed by the attending physician. During this period daily medical treatments were administered to his back injury.

At the time of the said injury the insurance policies herein were in full force and effect; and on August 20, 1954 plaintiff submitted to the defendant the first Claimant's Statement for Accident or Illness, which contained Dr. Macpherson's statement dated August 17, 1954 that plaintiff had suffered "acute lumbosacral sprain", and that his disability occurred on July 9, 1954 and that he was totally disabled from performing usual duties from July 31, 1954, and that said disability still existed. This physician's statement showed that no surgery had been performed but that plaintiff

would be compelled to wear a "camp traction corset and to be fitted with a Williams brace."

A second Claimant's Statement for Accident or Illness was submitted to the insurance company and stamped "Received" by it on October 1, 1954, wherein the physician's second statement dated September 27, 1954 diagnosed plaintiff's condition to be "lumbosacral sprain with ruptured disc, fifth interspace, with minimal nerve root involvement", and wherein the physician made reference to his previous report of August 17, 1954, above referred to.

The record discloses that following the first claim submitted by plaintiff, the defendant issued three checks, one dated September 22, 1954 in the sum of $67 to cover the six days' hospitalization from August 2 to August 7, 1954, inclusive; another dated September 22, 1954 in the sum of $133.33 to cover disability from July 31 to August 17, 1954, or seventeen days; and another dated October 8, 1954 in the sum of $140 to cover disability from August 17, 1954 to September 7, 1954, or twenty-one days, aggregating a sum of $340.33 for both hospitalization and disability. The benefits paid as evidenced by the two latter payments were based on a rate of $200, as provided for by the policy.

On September 17, 1954 defendant addressed a letter to plaintiff notifying him of the cancellation of his policies effective October 12, 1954, the next renewal

date following, and of its refusal to accept any further premium payments thereon. It is significant that in said letter plaintiff was gratuitously informed that the insurer could be *induced* to renew or revive the policies conditioned upon plaintiff agreeing to eliminate himself and to exclude benefits for loss on himself due to *any affection of the sacroiliac or lumbar region.* Subsequent letters by the insurer dated December 2, 1954 and December 14, 1954 reiterated its prior cancellation of the policies and declined to make any further adjustment or payment as claimed thereunder.

A third Claimant's Statement for Accident or Illness was submitted to the insurance company and stamped "Received" by it on October 27, 1954 wherein the physician's statement dated October 21, 1954 diagnosed the plaintiff's condition as "ruptured disc, fifth lumbar interspace, right (confirmed by myelogram October 20, 1954)."

A fourth Claimant's Statement was submitted to the insurance company and stamped "Received" by it on November 22, 1954 wherein the physician's statement dated November 16, 1954 showed spinal surgery performed on October 27, 1954 for the removal of a ruptured disc, fifth lumbar interspace, right. This statement reaffirmed plaintiff's disability to have occurred on July 9, 1954, the date of first consultation being on July 31, 1954, and that the total disability still existed as of the date of this statement, November 16, 1954.

On October 26, 1954 plaintiff was admitted to the hospital for spinal surgery performed on the following day and remained hospitalized until November 7, 1954. Thereafter he convalesced and was under constant medical supervision until he returned to his work on or about March 9, 1955. On May 14, 1955 Dr. Macpherson made a final examination of plaintiff's back and diagnosed his condition as a permanent partial disability of 20 to 25 percent of the body as a whole, recommending that plaintiff continue working in a supervisory capacity for at least an additional twelve months.

Plaintiff contends that he suffered an unrelenting disability as a result of the accidental injury suffered by him on July 9, 1954, and that the policies herein sued on cover the whole period of his disability alleged in his petition to be from July 9, 1954 to March 9, 1955.

The defendant contends that its liability covers only the period from July 31, 1954 to September 7, 1954, the period for which it honored and recognized plaintiff's claims. It further contends that after plaintiff returned to work on September 7, 1954, drawing his full salary, he was not sustaining any loss as contemplated by said policies; and that during this period of his employment the insurer availed itself of the right to cancel the policies effective October 12,

1954, notifying plaintiff thereof. Therefore, the insurer submits, the disability claimed by plaintiff after he ceased work on October 16, 1954 for the purpose of undergoing spinal surgery was no longer covered by the policies, same having been previously cancelled.

Defendant further contends that the policy contract does not provide for payments for any loss plaintiff might have suffered from any accident, irrespective of when the loss would develop, but only for loss sustained by him while the policies were in force and that since plaintiff's loss for which he is now suing did not occur until after the policies were cancelled he cannot recover in this suit.

The insurer concedes that there are no Louisiana cases or law supporting its contentions but would have us accept the jurisprudence announced in some other jurisdictions, which, if applicable, would defeat plaintiff's right to recover. An analysis of the facts giving rise to the legal conclusions reached by these common law courts are potently inapplicable and not controlling here.

There is no room for doubt that during the life of and while the policies were still in force, and prior to their abortive cancellation, the insurer had actual knowledge that the plaintiff had been accidentally injured and as a result thereof had suffered total disability which precluded him from resuming and performing the duties of his former occupation when he returned to work on September 7, 1954, thus bringing him within the meaning and intendment of the total disability defined in the policies; that this actual knowledge is manifested by the insurer in its letter of December 14, 1954 to plaintiff by the unqualified recognition of the fact that plaintiff's return to work on September 7, 1954 was purely on a trial basis as prescribed by the attending physician. Furthermore, the defendant was reliably informed prior to the effective date of the cancellation relied upon that plaintiff had suffered a ruptured disc, which ultimately required the spinal surgery performed on plaintiff on October 27, 1954.

The fact that plaintiff returned to work on September 7, 1954, continuing said work until October 16, 1954, does not under our law militate against him, it being undisputed that his labors during that period were confined solely in a supervisory capacity performing lighter tasks than his regular and customary duties as an iron construction worker.

In the case of Crowe v. Equitable Life Assur. Soc. of United States, 179 La. 444, 154 So. 52, 54, we cited with approval the following principles of law:

" ' * * * It may be said, generally speaking the provisions in life, health and accident insurance policies for indemnity in case the insured becomes totally, permanently or wholly disabled, etc., do not require that he shall be rendered absolutely

helpless, but, rather, merely requires such disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. At least such a rule has been in substance adhered to, where the policies required that he be totally disabled from transacting any and every kind of business. * * *' 7 Couch on Insurance, Sec. 1670, p. 5769. * * *

"The rule is stated in 14 R.C.L., § 491, p. 1315, as follows, viz.:

"The rule prevailing in most jurisdictions is that the total disability contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the 'total disability' contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner."

We conclude that the record fully supports plaintiff's contention that he was totally disabled after his accidental injury of July 9, 1954 from performing the same kind and character of work that he had performed prior thereto and that his period of disability existed from July 9, 1954, the date of injury, until March 9, 1955, a period of eight months during which time the policies herein sued on were in full force and effect. Therefore improvident the cancellation, having been executed at a time when the insurer had reliable information and knowledge of the accident and resulting disability suffered by plaintiff, is hereby declared to be illegal and ineffective as well as capricious and arbitrary.

The right of an insurer to cancel its policy at any time by written notice delivered to the insured is governed by the laws of this state as expressed in LSA–R.S. 22:213, subd. B.(7) but said cancellation must be without prejudice to any claim originating prior thereto. The statute reads as follows:

"Cancellation: The insurer may cancel this policy at any time by written notice delivered to the insured, or mailed to his last address as shown by the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. *Such cancellation shall be without prejudice to any claim originating prior thereto.* The insured may likewise cancel this policy on the above terms." (Italics ours.)

Under the circumstances of this case, we conclude that the action of the defendant in refusing to comply with the terms and conditions of the two policies herein sued on, assigning as the reason therefor that it had

cancelled same, was arbitrary, capricious and unreasonable and that such a course of conduct justifies the enforcement of the penalties provided by our law.

We conclude that this case should be remanded for computation by the trial judge of the liability of the defendant under its policies, less credit for payments previously made, and for the statutory penalties provided for by LSA–R.S. 2:657, 658.

Accordingly, for the reasons assigned, this cause is remanded to the district court for computation of the award in favor of plaintiff, in accordance with law and not inconsistent with the findings herein.