GAUDIN, Judge.
Appellant is Mrs. Shirley M. Randall, who filed this breach of contract suit in the 29th Judicial District Court contending that she is totally and permanently disabled in accord with the terms and conditions of an insurance agreement.
*490 Following a non-jury trial, the district judge dismissed Mrs. Randall’s petition on July 15, 1981, stating:
“Plaintiffs testimony indicates that she is disabled. However, a reading of the doctor’s testimony as to her disability would indicate to the contrary. Inasmuch as plaintiff must carry her burden of proof by the ponderance of the evidence, based upon the foregoing bits of evidence, her claim must fall.”
For reasons contained hereinafter, we do not agree with this conclusion.
FACTS
Mrs. Randall was employed as a medical technician at Ochsner Foundation Hospital when she slipped and fell on February 1, 1980. At the time, she had an outstanding loan with the hospital’s credit union, the balance being $2,714.38.
When the loan was made, Mrs. Randall acquired a policy from appellee, Cuna Mutual Insurance Group, whereby Cuna was to assume payment of the loan balance “.. . at the time of ... total and permanent disability of the member...”
The policy reads:
“The payment of a claim because of total and permanent disability ... shall be made solely for the reason that the member ... is totally and permanently unable to engage in any occupation for remuneration or profit...”
Appellant was treated by Dr. Ralph J. Gessner, who eventually performed surgery to remove a disc fragment that had protruded into the spinal canal and was putting pressure on the spinal nerves.
Dr. Gessner followed Mrs. Randall as an outpatient after 'the surgery, the last visit prior to the trial being in March of 1981.
THE TRIAL
We note at the onset that no testimony was taken at the trial. Instead, the depositions of Dr. Gessner and Mrs. Randall were submitted into evidence by agreement by counsel. Thus, the trial judge was deprived of seeing and hearing Dr. Gessner and Mrs. Randall on the witness stand, and he rendered judgment after reading and evaluating the two depositions and coming to a legal conclusion.
Actually, the trial judge did not have to make any significant findings of fact. Mrs. Randall said that she was disabled and Dr. Gessner agreed. Only the legal effect of this uncontradicted testimony was at issue.
Accordingly, we do not have to find manifest error, as required by Canter v. Koehring, 283 So.2d 716 (La.1973), before setting aside the district court decree. We have only to conclude that the trial judge came to an improper legal determination, and that we should correct it, as LSA-C.C.P. art. 2164[1] directs.
MRS. RANDALL’S JOB
Describing her duties at Ochsner, appellant said:
“. .. in the morning we’d go there and set up everything, and load it on to the big carts ... then we go ahead to the floors and, you know, draw the blood from all the patients that we have to ... and sometimes we go do the finger sticks.. .
“... a lot of walking all day; bending, a lot of that; twisting, turning, pulling, and sometimes you had to, you know, try to help get the patients in position, and fighting with kids.”
At the time of her deposition on March 17, 1981, Mrs. Randall was taking medication and still under active treatment by Dr. Gessner.
She said:
“. .. but I’m still, you know, I’m still having problems ‘cause I’m still not walking with the same speed I’d been walking. I’m still walking slow on account of my leg and my back.”
*491 Mrs. Randall was receiving workmen’s compensation payments in July of 1981 and had not returned to her employment.
DR. GESSNER’S ASSESSMENTS
When Dr. Gessner was deposed on June 3, 1981, he described Mrs. Randall’s treatment and surgery. A lumbar myelogram "... demonstrated a herniated nucleus pulposus at the L5-S1 interspace on the level she was operated on at Hotel Dieu in September of 1980 at which time an L5-S1 lami-nectomy and diskectomy was performed.”
Further from the deposition:
“... the last time I saw her she continued to have subjective complaints of low back pain. My physical examination was essentially normal with only a mild degree of spasm. She had a healed incision ... and I felt she was responding favorably to the surgery.
“I’m of the opinion at this time that ... Shirley Randall is not permanently and totally disabled ... I feel she has a 25 per cent permanent disability to her back, but this is not a total disability. I feel that she may have difficulty handling certain job categories, such as involve heavy lifting or climbing or excessive stooping and bending. She shouldn’t lift anything over 25 pounds. However, she is a relatively young woman,[2] and I think she could be sent to some sort of rehabilitation school or something to retrain her in another job activity...
“I felt that she had reached maximum recovery in that there is no further surgical procedure that I entertained regarding ... Randall; that she will occasionally need analgesics and some medication supports in relief of her symptomatolo-gy- • •
“I have not released her to go to the work activity I described but more sedentary work I feel she could perform...
“. .. aides at the hospitals I’m associated with are called upon to transfer patients and just regular duties, cleaning up, something like that. I think that certain duties that are required of an aide she could perform. However, I would not advise her to be lifting patients or transferring patients or anything like that which would require excessive stress to her back...
“I do not feel that she is totally and permanently disabled... I feel she can return to some kind of work.”
THE CROWE DECISION
The Louisiana rule with regard to total and permanent disability was first expressed by the Supreme Court in Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52 (1934).
From Crowe:
“... total disability contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary ... courts giving consideration to the object of the contract, hold that the ‘total disability’ contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured’s business or occupation in substantially his customary and usual manner.”
Lewis Crowe, a 50-year-old manual laborer, sustained a fracture of the fourth lumbar vertebra. Following treatment, at least one physician did not consider Crowe’s disability as total and permanent and advised him to return to his employment. Crowe tried to work, but couldn’t.
The policy in Crowe stated that the insurance company would pay if the insured “... became totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value.”
*492 The insurance company argued that even if Crowe was unable to perform manual labor, he was capable of doing light work that would not place undue stress on his injured back. The Supreme Court did not agree, saying:
“... such a construction, if adopted and enforced, would render an insurance policy of no practical benefit to an illiterate insured who earns his livelihood by hard manual labor...”
Such a policy stipulation, the Court went on, “... would so seldom become operative that it would be about as well as if left out of the policy altogether...”
The Court concluded that if Crowe could not perform the substantial and material acts of his occupation in the usual and customary way, he was in fact “total and permanent” and covered by the insurance contract.
This State’s courts have constantly recognized and followed Crowe. See Boes v. New Orleans Public Serv. Inc., 385 So.2d 588 (La.App. 4th Cir.1980); Francois v. Mutual Life Ins. Co. of New York, 405 So.2d 1292 (La.App. 4th Cir.1981); Johnson v. State Farm Mutual Automobile Ins. Co., 342 So.2d 664 (La.1977); and Laborde v. Employers Life Ins. Co., 412 So.2d 1301 (La.1982).
The Laborde opinion was handed down on April 5, 1982, and is the Supreme Court’s latest decision regarding the Crowe guidelines.
The Court pointed out that while Ellis Laborde, a carpenter, could do light work, he was not able to do physical labor, lift or climb and therefore was not able to perform in the usual and customary way. He was found to be totally disabled.
CONCLUSION
Although Dr. Gessner said that Mrs. Randall was not, in his judgment, totally and permanently disabled, we agree with appellant that this was his medical rather than a legal opinion. The doctor, in substance, said that his surgery had been a success but that Mrs. Randall was left with a 25 per cent permanent disability to her back, rendering her incapable of performing her job as she usually and customarily did.
Dr. Gessner recommended a “... rehabilitation school or something to retrain her in another job category...” and he specifically said that Mrs. Randall should not do “... heavy lifting or climbing or excessive stooping and bending.” Mrs. Randall could not perform in the usual and customary way, and Dr. Gessner would not release her to return to work.
Dr. Gessner’s own words clearly place appellant within the Crowe guidelines, and we believe that the trial judge did impose too restricted a policy definition on total and permanent disability as it relates to Mrs. Randall.
We annul and set aside the judgment of the district court dismissing Mrs. Randall’s suit, and we render judgment in her favor and against Cuna Mutual Insurance Group in the sum of $2,714.38, plus legal interest from date of judicial demand, until paid, and all costs of this proceeding.
REVERSED AND RENDERED.

. LSA-C.C.P. art 2164: “The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal...”

. The record does not indicate Mrs. Randall’s age.