CARNELIOUS v. COLUMBIAN NATL. LIFE INS. CO.

(April 27, 1931. Opinion and Decree.)

Normann, McMahon & Breckwoldt, of New Orleans, attorneys for plaintiff, appellee.

S. S. Goldman, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. This is a suit on an accident insurance policy. Plaintiff alleges that the defendant insurance company on May 27, 1929, issued to him its policy No. 46,164; that on the 2d day of February, 1930, he was accidentally injured, with the result that his leg had to be amputated, causing his total disability and entitling him to the weekly benefits provided under the terms of the policy; that the insurance company paid him $5 per week, the amount due him, up to May 14, 1930, when, without cause and for reasons purely vexatious, it declined to make further payments. He alleges that the refusal to pay was persisted in for more than 70 days and without just and reasonable grounds, entitling petitioner to double indemnity and attorney's fees in an amount to be fixed by the court. He prays for judgment for $55, the amount alleged to be due at the date of the filing of the suit, and for such further sum as may be found to be due as of the date of the trial, and for double indemnity and attorney's fees. He further prays for reservation of his right to sue for such additional benefits as may be due under the terms of the policy sued on.

Defendant answered, admitting the issuance of the policy and its liability thereunder, and justifies its failure to continue its payments due upon the ground that, since May 21, the date upon which the first unpaid installment was due, plaintiff failed to supply it with a certificate of a physician, as required by the terms of the policy. The answer also sets up that on July 7, 1930, it offered plaintiff's attorney the sum of $40, covering eight weeks' disability, which offer was declined, and that amount, upon permission of the court, was deposited in the registry of the court for plaintiff's benefit.

It thus appears that the entire controversy concerns the penalties provided by law for failure to make prompt payments.

Act 310 of 1910 provides in section 1:

"* * * That no life, health or accident insurance company shall write policies or contracts of insurance, in this State, insuring any person against loss on account of sickness or accident, wherein payment of or indemnities shall be deferred longer than thirty days from written notice, and proof to the company, by the attending physician, in the form required by the terms of such policy or contract of insurance, informing the company of such sickness or accident, entitling the assured to payment under the terms of such policy or contract."

Section 3 provides:

"* * * That the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted."

We have no hesitancy in concluding that the defendant in this case stopped payment of the weekly indemnity without "just and reasonable grounds," and we agree with plaintiff's counsel in his statement that the reason set up in the answer was not the one which influenced the defendant in its declination to make further payments. The evidence indicates that the payments were stopped because of the belief that plaintiff's claim could be defeated upon the ground that he was afflicted with syphilis, the hospital report showing that there had been a positive Wasserman. When the officers of the defendant company discovered this fact, plaintiff was informed that no further payments would be made because he had "bad blood," and two certificates of his physician covering two weeks' disability were ignored upon that ground. The defendant's officers, following a belated conference with their attorneys, were informed of the frivolous character of their action in this respect, whereupon an attempt was made to pay the arrears which had been withheld. There was no good reason for delaying the payment of the indemnity for eight weeks, since defendant's attorney might have been consulted at once, without causing the plaintiff the inconvenience resulting from the delay. The offer of the $40 even if it had been made in proper form, can have no effect, because, at the time it was made, it did not cover the amount due plaintiff under his policy.

We were inclined to the view that no consideration could be given the evidence adduced on the trial showing the state of affairs subsequent to the date of the filing of the suit, but evidently we were in error. Wunderlich v. Simpkin, 5 La. App. 35; McCalop v. Fluker's Heirs, 12 La. Ann. 551; Shreveport Ice & Brewing Co. v. Mandel Bros., 128 La. 314, 54 So. 831; Bonnabel v. Metairie Cypress Co., 129 La. 928, 57 So. 271.

This evidence shows that plaintiff's disability continued up to the date of trial, and the court, in rendering its judgment, took that fact into account. Indeed his counsel claims that he is entitled to the benefits provided by the policy as long as he lives, because of a provision in the policy entitling him to the disability benefit "for each day that the insured is by reason of accidental injury, of which there is external evidence, disabled from performing work of any nature." The defendant being a longshoreman, and having lost his leg, it is claimed that he is permanently disabled from performing work of any nature. Consequently he is entitled to receive the full benefit of the policy which limits him to 26 weeks each year as

long as he lives. With this contention however, we are not concerned, since it forms no part of the issue in the case before us. Notwithstanding continued disability, we do not believe that judgment should be rendered for weekly benefits beyond August 5, 1930, as it was on that day that plaintiff's counsel, through the receipt of a letter from defendant's counsel, was notified of the willingness of defendant to resume payment of disabilities upon the submission of proof from week to week in accordance with the terms of the policy. This letter was written 12 days after the suit was filed and 4 days after the filing of defendant's answer and reads as follows:

"With reference to the above matter, if the assured since suit was filed continues to be disabled to the extent that he is entitled to the disability benefits under the terms of the policy, and if he will submit proof thereof each week in accordance with the terms of the policy, disability benefits will be paid to him."

Whatever may have been the situation prior to the receipt of this letter, it is our opinion that it had the effect of notice to plaintiff's counsel of a changed attitude on defendant's part, and that it was plaintiff's duty to have submitted the formal weekly proofs of loss under the terms of the policy from that time on.

On August 5, 1930, there was due plaintiff 12 payments, 8 of which had been due for more than 30 days. Plaintiff should recover four weeks at $5 a week and 8 weeks at $10 a week, or $100, plus a reasonable attorney's fee, and his rights should be reserved to sue for such further benefits as may be due under the policy. The trial court fixed the attorney's fee at $25, an amount we consider reasonable.

For the reasons assigned the judgment appealed from will be amended so as to award the plaintiff judgment in the sum of $125, with reservation of his right to sue for such further sums as may be due under the policy.