## CATES v. NEW YORK LIFE INS. CO. (TUCKER, Intervener).

### No. 4917.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1935.

Montgomery & Montgomery, of New Orleans, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellees.

TALIAFERRO, Judge.

In the year 1929 defendant issued to plaintiff a policy of insurance on his life for $5,000, containing the following disability provisions, viz.:

"Disability shall be considered total whenever the Insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this Policy took effect and before the anniversary of the Policy on which the Insured's age at nearest birthday is sixty.

"Upon receipt at the Company's Home Office, before default in payment of premium, of due proof that the Insured is totally disabled as above defined, and will be continuously so totally disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the Insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined, the following benefits will be granted:

"(a) Waiver of Premium.—The Company will waive the payment of any premium falling due during the period of continuous total disability, the premium waived to be the annual, semi-annual or quarterly premium according to the mode of payment in effect when disability occurred.

"(b) Income Payments.—The Company will pay to the Insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this Policy) for each completed month from the commencement of and during the period of continuous total disability. If disability results from insanity, payment will be made to the beneficiary in lieu of the Insured."

The insured, plaintiff, became disabled from following diseases, viz.: Chronic interstitial nephritis (Bright's disease); arteriola sclerosis (hardening of the smaller arteries); malignant hypertension (high blood pressure); cardiac hypertrophy and dilatation (thickening of the muscles of and enlargement of the heart, superinduced by high blood pressure), and brings this suit to recov-

er the sum of $50 per month, beginning June 9, 1933, and to continue balance of his life. He alleges that his disability is total and permanent, and prevents him from pursuing any occupation for remuneration or profit; that the diseases producing said disability are incurable; that in May, 1933, he furnished the proof of his condition to defendant, as required by the policy, which was rejected, and requested payments refused by it.

Defendant excepted to the suit on the ground and for the reason that plaintiff had, on July 24, 1929, assigned the policy to Edna Jones Tucker, and he therefore could not stand in judgment therein. Mrs. Tucker then intervened in the suit, asserting that said policy, with all the dividends, benefits, and advantages to be had or derived therefrom, subject to the conditions of the policy, had been assigned to her. She adopts the allegations of plaintiff's petition, and claimed for herself the amount for which he sued.

Defendant admits issuance of the policy, but in all other respects denies the allegations of plaintiff's petition. It also denies the allegations of the petition of intervener, except the assignment of the policy to her.

This case was consolidated with that of this same plaintiff against Jefferson Standard Life Insurance Company (159 So. 168), No. 4896 on the docket of this court. The same note of evidence was used in each case.

There was judgment for plaintiff and intervener as prayed for by them. Defendant appealed.

Under the terms of the policy sued on, according to the verbiage thereof, before plaintiff is entitled to recover, he must prove (1) that from the disease he now suffers, he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit; and (2) that such total disability will continue the remainder of his life; or (3) if proof of the permanency of his disability is inconclusive, recovery may be had if such proof establishes that insured is, and for a period not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined.

While the language of this policy is not precisely the same as that employed in the policy sued on in said case No. 4896, yet in meaning, substance, and effect it is the same. The reasoning, conclusions, findings on the facts, and authorities cited in support of our judgment in that case are entirely pertinent to the present case. We quote that opinion, in so far as necessary, and adopt it in and for the present case, to wit:

"Plaintiff was sworn as a witness in his own behalf. After he had testified rather briefly in response to questions by his counsel and the court, he was consigned to defendant's counsel for cross-examination. They asked no questions. He was excused. Other witnesses then testified. When plaintiff closed his case in chief and his counsel announced that he rested, defendant, at the beginning of introduction of its evidence, called plaintiff for cross-examination. On objection from plaintiff's counsel that the right of cross-examination had been tendered and not availed of, the request of defendant was refused. It did not cross-examine plaintiff at all. To this ruling defendant excepted, and the record contains a formal bill of exception incorporating the facts of the matter. It is defendant's contention that the right to call plaintiff as under cross-examination is guaranteed to it by Act No. 126 of 1908. This act says: 'Be it enacted by the General Assembly of the State of Louisiana, That in all causes pending and untried or to be hereafter instituted in any court of this State, the parties litigant shall be entitled to examine their opponent, as under cross-examination, and in such event the parties thus examining opponents shall not be held as vouching to the Court for the credibility of the opponents so placed upon the stand, or as estopped from impeaching, in any lawful way, the testimony given as herein provided for.'

"It will be observed that under the latter part of this law a defendant is fully protected against certain results that would have been visited upon him prior to passage of this law, if he had sworn plaintiff as a witness in his (defendant's) behalf and the testimony given by him had been untrue or in other respects harmful to defendant's case. By this act, defendant, when he calls plaintiff to testify, is not held to have vouched for his credibility, and is not estopped from traversing his testimony when given under such circumstances. It is our opinion that this act may be availed of by the defendant in a pending suit only when the plaintiff has not taken the stand as a witness in his own behalf. When he has testified for himself, defendant may or may not cross-examine him, but, if he does so, he is not bound by the answers elicited thereby, nor is his credibility to any extent vouched for by defendant because of such cross-examination. In the present case, we do not see the application of the 1908 act. The situation is the same as though the act had never been adopted. Plaintiff, when he

tendered himself as a witness, was of the same status as any other witness sworn in the case. At the proper time defendant declined to cross-examine him. Out of the regular order of trial procedure, defendant undertook to do that which he had declined to do in regular order. The proposition addressed itself to the court's discretion. Had defendant's request been granted, the testimony adduced thereunder would be properly before us, but, since the request was refused, we do not think the ruling can be said to amount to reversible error. If defendant's contention is well founded, then it could have deferred cross-examining all of plaintiff's witnesses until he had rested. It was never contemplated that such a course be tolerated by a trial court.

"Article 477 of the Code of Practice provides that, after plaintiff has closed his side of the case, completed the introduction of his evidence, 'the defendant shall bring his witnesses, and produce the proof in support of his defense' and the plaintiff may then bring witnesses to rebut evidence of defendant's side. In this case plaintiff had 'closed his evidence,' and, when defendant called plaintiff for cross-examination, he was not 'brought' as a witness for defendant. It is true that it has been held that the provisions of article 477 are not immutable, but directory. This does not argue against the correctness of the lower court's ruling, but rather supports the thought that only a judicial discretion was exercised therein, and that no substantial right has been denied nor injustice committed. * * *

■ "Several years ago plaintiff's right leg was amputated at the middle thigh on account of osteomyelitis. In January, 1933, he suffered a broken shoulder from a car collision. He spent some days at Hot Springs, Ark., in May, 1932, for his health, and, when examined by a physician there, it was discovered that his kidneys were involved and his blood pressure was much above normal. Alarmed at this intelligence, on his return home, near Shreveport, La., he immediately had Dr. Herold to make a close physical examination of his body. The findings of the physician in Hot Springs were confirmed by Dr. Herold. He found that plaintiff was suffering from all of the ailments detailed in his petition, which we have heretofore mentioned. Plaintiff has been under his observation regularly since that time. Dr. Kerlin, who examined plaintiff a day or two before the case was tried, substantially agrees with Dr. Herold in this respect. There is no serious variance in their findings. There is some

material difference in their opinions on the question of the extent and nature of the disability to plaintiff directly resulting from these diseases and their collateral effect upon the organs of the body.

"To the lay mind, it seems obvious that a man afflicted with all these troubles, who has devoted his life to working in a retail store and overseeing farming activities, as plaintiff appears to have done, would certainly be disabled wholly to perform, to a substantial degree, the work and labor of said callings, and especially so when we take into consideration the fact that he has only one leg.

"Plaintiff is suffering from chronic Bright's disease. Dr. Kerlin found two tumor masses in the abdominal quadrant which had strained the kidneys to about twice their normal size. The kidney condition, which is conceded to be incurable, has, to a large extent, if not entirely, superinduced the other complaints, bringing about organic changes. Both doctors thought that by careful treatment, diet, and proper régime plaintiff's condition would improve temporarily, but neither would say that he could possibly be restored to good health, and both said it was most probable that the diseased kidneys would ultimately shorten his life.

"Dr. Kerlin made a written report of his findings and conclusions after examining plaintiff on January 19, 1934, of which counsel on both sides were provided with copy, wherein he concludes: 'While I am aware that the findings in this case are sufficient to bring about total and permanent disability, I am of the opinion that the claim of total disability in this case is mostly subjective, however, I would not be willing to assume the responsibility of saying he is not totally and permanently disabled to pursue a gainful occupation.'

"He modified the report slightly by saying that he thought plaintiff could perform some work in his usual business, but said also that he could not do a man's work, if he should be under the control of some one else as to his movements. In other words, if he should be engaged in a business of his own, his condition was such as to render some substantial service to it, but, if he was working for some other person, being required to go and come regularly and to take instructions as to the manner and means of performing his duties, he was not able to do a man's work.

"Dr. Herold was positive that plaintiff's condition was such, and had been so since the early part of 1932, that he could not pursue

a gainful occupation. Plaintiff said, so far as he knew, he had no capacity for doing work whereby he could make a living or earn money.

"Our own conclusions, from all the testimony in the case, are that plaintiff's disability arose from diseases progressive in character and incurable; that he might intermittently engage in some sort of work which he has been capable of performing in the past, but, for him to do so regularly and continuously, the disability would become literally complete or total, causing him to be a charge upon his people or the public, and unquestionably hastening death. This condition has been present since 1932. These findings are sufficient to sustain plaintiff's demands. Few people, if any, are so fortunate as to have employment of such a pleasant character that they may work at it as little, and when, and as long, as they desire. Operating a plantation store or superintending the farming activities of a plantation requires constant and thoughtful attention of those charged with their conduct.

"On the face of the provisions of the policy, the insured would have to be in a bed-ridden condition, or have all limbs paralyzed, or afflicted by other disease producing total lack of ability to move about, before he would be entitled to recover thereunder. The language of these provisions is so definite and positive on its face that, if the insured, a merchant or farmer, or other kind of laboring man, were suffering from disease, sufficient in its intensity to prevent him from discharging the duties of his particular calling, though not sufficient to prevent him from selling peanuts or newspapers on the streets, or shining shoes, in such case he would not be eligible to recover the benefits stipulated in the policy. We know such a strict construction of the intent and meaning of the insurance contract was not intended. The law certainly does not view it in such a strict manner. We think the following, taken from 14 Ruling Case Law, § 491, correctly interprets contracts of the character we are considering, and places thereon a construction fair to insurer and insured:

" 'Total Disability.—Accident policies usually provide for periodical indemnity for "total disability," or what is usually considered its equivalent, for injuries disabling the insured from transacting any of the duties pertaining to his occupation. Total disability is necessarily a relative matter, and must depend chiefly on the peculiar circumstances in each case. It must depend largely upon the occupation and employment and the capabilities of the person injured. The rule prevailing in most jurisdictions is that the "total disability" contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties, he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the "total disability" contemplated by the agreement is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner. If the prosecution of the business requires the insured to do several acts and perform several kinds of labor, and he is able to do and perform only one, he is as effectually disabled from performing his business as if he were unable to do anything required to be done, and while remaining in that condition he suffers loss of time in the business of his occupation. Nor do the provisions contemplate absolute physical inability to transact any kind of business pertaining to one's occupation, but it is sufficient if his injuries are such that common care and prudence require him to desist from transacting any such business in order to effect a cure. And the fact that the insured may be able for an inappreciable period of time to perform his accustomed labor does not prevent a recovery, where he is actually totally disabled from following any avocation.'

"The insurance world has evidently given long and deliberate consideration to the wording of provisions in policies of the character here discussed. We find from the jurisprudence of other states, much of which is cited by defendant's counsel, that nearly all the companies employ language somewhat dissimilar, but generally about the same in substance. It is impossible to couch such provisions in language that will clearly meet every case. In each case interpretation necessarily must be resorted to in the light of all the facts. Each case has to be determined from its own peculiar facts and circumstances.

"Applying the quoted statement from Ruling Case Law to the case at bar, plaintiff is entitled to recover. He is now unable to do 'substantially all of the material acts necessary to the prosecution' of his business 'in

substantially his customary and usual manner.' His condition is such 'that common care and prudence require him to desist from transacting any such business,' in order to not seriously aggravate his condition and shorten his life.

"This ruling is supported by Manuel v. Metropolitan Life Ins. Co. (La. App.) 139 So. 548; Phillips v. Mutual Life Ins. Co. (La. App.) 155 So. 487.

"In Crowe v. Equitable Life Assurance Company, 179 La. 444, 154 So. 52, the court had for consideration a policy with total disability clause therein very much' similar to that of the present case. The rule stated in Ruling Case Law, which we have quoted supra, was approved, and Justice Rogers, as the court's organ, said that this rule is supported by the weight of authority in England, as well as in this country. The Manuel Case, supra, was referred to approvingly."

The judgment appealed from is affirmed, with costs.