## THOMPSON v. NEW YORK LIFE INS. CO.*
### No. 5073.

Court of Appeal of Louisiana.
Second Circuit.
Dec. 13, 1935.

Montgomery & Montgomery, of New Orleans, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

DREW, Judge.

Plaintiff is insured under two life insurance policies issued by the defendant in 1920, one for the sum of $1,000 and one for $2,000. Each policy provides for disability benefits in the amount of one-tenth of the face value of the policies annually after the disability should arise, and for waiver of premiums.

Plaintiff sued for a refund of premiums paid by him, amounting to $264.04, and for disability benefits for one year, amounting to $300, and claimed, under Act No. 310 of 1910, a penalty of double the amount due for failure of the defendant to pay the disability benefits. He also claimed reasonable attorney's fees.

Plaintiff's contention is that he became totally and permanently disabled, within the meaning of each of said policies, on or about January 8, 1931, at which time he was suffering with chronic myocarditis and chronic bronchitis, which wholly disabled him permanently and continuously from engaging in any occupation for remuneration or profit, and that his condition from that date on had continuously grown worse and, since January 17, 1932, he had been confined to his bed most of the time. That, notwithstanding his condition and against the advice of his physician, he endeavored to continue to work and to perform some of his duties as superintendent of W. K. Henderson Iron Works & Supply Company, until November 10, 1931.

The clause in said policies, under which plaintiff makes his claim, is as follows:

"Whenever the Company receives due proof, before default in the payment of premium, that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than 60 days—the permanent loss of the sight of both eyes, or the severance of both hands 'or of both feet, or of one entire hand and one entire foot, to be considered a total and permanent disability without prejudice to other causes of disability, then—

"1. Waiver of Premium.—Commencing with the anniversary of the policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the policy, the Company will not deduct the premiums so waived. The loan and surrender values provided for under Sections 3 and 4 shall be calculated on the basis employed in said sections, the same as if the waived premiums had been paid as they became due.

"2. Life Income to Insured.—One year after the anniversary of the policy next succeeding the receipt of such proof, the Company will pay the insured a sum equal to one-tenth of the face of the policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured. Such income payments shall not reduce the sum payable in any settlement of the policy. The policy must be returned to the Company for endorsement thereon of each income payment. If there be any indebtedness on the policy, the interest thereon may be deducted from each income payment.

"3. Recovery from Disability.—The Company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made.

"The Quar. annual premium for the total and permanent disability benefits is $1.36, and is included in the premium stated on the first page of the policy. Any premium due on or after the anniversary of the policy on which the age of the insured at nearest birthday is 60, shall be reduced by the amount of premium charged for the disability benefits."

Plaintiff further alleged that he made due proof of disability before default in the payment of premiums, and paid premiums thereafter in the amount of $264.-04.

Defendant admits the contract of insurance and payment of premiums as alleged, but denies that plaintiff was disabled, within the intendment of the policies, before the anniversary of the policy on which the insured's age at his nearest birthday was sixty years. It further avers that the proof made by plaintiff does not bring him under the provisions of the policies sued on.

The lower court rendered judgment for plaintiff as prayed for, and fixed the attorney's fees at $250; from this judgment, defendant has prosecuted this appeal.

Plaintiff was born June 25, 1871, therefore, he reached his sixtieth birthday on June 25, 1931. Both policies sued on were issued on August 19, 1920. The anniversary of the policies on which the insured's age at his nearest birthday was sixty years was August 19, 1931. The proof of disability made by plaintiff was of date February 15, 1932. The questions and answers on the proof sheet made by plaintiff and which are pertinent to the question here are as follows:

"8. (a) Are you wholly disabled at the present time?

"A. See doctor's report.

"(b) State cause of disability—

"See doctor's report.

"9. (a) On what date did the illness begin that led up to the present disability and what was the nature of the illness?

"A. See Dr. Gowen's report.

"(b) Give name and address of the first physician consulted at the beginning of that illness.

"A. Dr. Chas. A. Gowen, Shreveport, La.

"(c) State date on which you first consulted that physician.

"A. January 15, 1931.

"(d) Give names of all other physicians consulted and dates of such consultations.

"A. Dr. Heard. See report.

"10. From what date has your disability prevented you from engaging in any occupation whatsoever for remuneration or profit?

"A. 11 — 10 — 31.
    mo.   day   yr."

Accompanying this proof sheet filled out by plaintiff was a proof sheet filled out by Dr. Heard, plaintiff's physician, in which the following questions were answered by Dr. Heard, as follows:

"7. Diagnosis and symptoms of disease, infirmity, or injury causing disability?

"A. Chronic myocarditis; chronic bronchitis—severe marked dyspnoea.

"8. (a) Is the insured in your opinion wholly disabled and prevented from engaging in any occupation whatsoever for remuneration or profit?

"A. Yes.

"(b) If he is, from what date, to your knowledge, has he been so prevented?

"A. Jan. 17, 1932.

"9. Give your opinion as to whether or not the insured will be permanently, continuously and wholly prevented for life from pursuing any and all gainful occupations, by reason of this disability.

"A. Indefinitely disabled totally—probably permanently."

Also there was attached a proof sheet made by Dr. Gowen, a heart specialist, which is as follows:

"4. Date of first consultation in present disability?

"A. January 15, 1931.

"5. History given you at that time?

"A. Cough, and severe most of time; large amount of sputum for past several months; shortness of breath.

"(a) Date of onset of present disability?

"A. Several months before I saw him.

"(b) Predisposing cause, if any, of present disability?

"A. Not known.

"(c) Names and addresses of any physicians previously consulted by insured.

"A. Dr. Joe Heard, Shreveport, La. Dr. George Dickson, Shreveport, La.

"6. If you were consulted for any cause prior to the present disability, give dates and details of such consultations or treatments.

"A. No.

"7. Diagnosis and symptoms of disease, infirmity, or injury causing disability?

"A. Chronic bronchitis; chronic myocarditis; cough expectoration; extreme shortness of breath.

"8. (a) Is the insured in your opinion wholly disabled and prevented from engaging in any occupation whatsoever for remuneration or profit?

"A. Yes, and has been for fourteen months.

"(b) If he is, from what date, to your knowledge, has he been so prevented?

"A. In January, 1931, when I first examined Mr. Thompson, I advised him to quit work.

"9. Give your opinion as to whether or not the insured will be permanently, continuously and wholly prevented for life from pursuing any and all gainful occupations, by reason of this disability.

"A. With amount of dilatation in the bronchi and the heart condition, in my opinion, he is permanently disabled."

A casual reading of the above reports discloses that Dr. Gowen says plaintiff was totally and permanently disabled from engaging in any occupation for remuneration or profit after January 15, 1931, and plaintiff states his disability began November 10, 1931. If the statement of Dr. Gowen is correct, plaintiff is entitled to recover, but if plaintiff's statement is correct, he is not entitled to recover.

Plaintiff was for many years employed as superintendent of the Henderson Iron Works & Supply Company, in Shreveport, La. On January 15, 1931, Dr. Gowen examined him and advised him to quit work. Plaintiff did not take Dr. Gowen's advice, and actually continued to perform his duties as superintendent until November 10, 1931, at which time the business was discontinued and its affairs liquidated. His explanation as to why he continued to work is as follows:

"A. In January, 1931, I had an attack of flu and I went to Dr. Gowen; in fact, called Dr. Gowen to my residence and he visited me there and treated me until I was able to get out. I then went out to Dr. Gowen's office and he gave me a thorough examination and told me that I had been a good piece of machinery, but that I had worn out and if I wanted to live, I had better quit work, but like the majority of men who like to carry on, I had been with the W. K. Henderson Iron Works & Supply Company so long, I thought that I should render their business what service I could, to help them and do all I could, with the company. I felt like that was my duty; to stay with the ship as long as it was afloat, although I would have liked to have taken Dr. Gowen's advice and I have paid the penalty for not doing so. I did what I could to help retain the business of the W. K. Henderson Iron Works & Supply Company."

The record discloses that plaintiff was not as alert after January, 1931, as he had been prior thereto, and, instead of visiting the foremen in the plant to give orders and directions, on many occasions he would have them come to his office; and when he would visit the different departments, and have to climb a stairway, he would be out of breath and forced to sit down to regain his composure. It also discloses that plaintiff did not have to continue his work in order to earn a living, as his salary would have been paid whether he worked or not. It is also shown that had he been a stranger to the company, he would not have been employed in the condition he was, but it is also shown that he did perform all the duties of the superintendent and all the du-

ties he had performed for many years prior to January, 1931.

It is further shown that between the period of January 15, 1931, and November 10, 1931, plaintiff was absent from his duties only two or three days per month, and that he did not go to bed until January, 1932. It is to be noted that plaintiff did not have to work to earn a living; that he made no proof of disability until February 15, 1932; that he actually worked up until November 10, 1931, and to say that he was totally and permanently disabled from engaging in any occupation for remuneration or profit prior to November 10, 1931, would be to declare that a fact which did exist, did not exist, and to so hold, we would have to accept the testimony of one expert witness which testimony is in conflict with the proof made by plaintiff himself, and the actual fact that plaintiff did engage in work for remuneration.

We therefore find that plaintiff has not brought himself under the provisions of the policies sued on and that his disability did not prevent him from engaging in an occupation for remuneration before the anniversary of the policy on which the insured's age at nearest birthday was sixty years.

It therefore follows that the judgment of the lower court is erroneous and it is reversed; and the demands of plaintiff are rejected at his costs.