### SMITH v. MUTUAL LIFE INS. CO. OF NEW YORK.*

#### No. 5131.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1936.

Montgomery & Montgomery, of New Orleans, and H. W. Hill, of Alexandria, for appellant.

Hunter & Neilson, of Alexandria, for appellee.

TALIAFERRO, Judge.

On December 9, 1929, defendant issued to plaintiff a policy contract in which it is stipulated that, if before attaining the age of 60 years, and while the policy is in force, the insured shall furnish to the insurer due proof that he is totally and permanently disabled, as therein defined, certain benefits would be granted to him during the remainder of his lifetime, so long as such disability continued. To entitle the assured to the benefits referred to, disability must be of the character defined in the following stipulations in the policy:

"Section 3—Benefits in Event of Total and Permanent Disability Before Age 60.—

"Total Disability—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful. occupation.

"Permanent Disability—Total disability shall, during its continuance, be presumed to be permanent;

"(a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the insured; or

"(b) If such disability has existed continuously for ninety days."

In the latter part of the year 1930, pains and aches developed in the lower region of plaintiff's back. He consulted a physician, but application of ordinary remedies yielded no relief. An X-ray picture revealed well-developed arthritis involving the second, third, fourth, and fifth lumbar vertebræ. The doctors describe this arthritic condition as being a "lipping of the vertebræ with extensive spur formation." These spurs protrude from the right side of the spine and scrape each other when the patient engages in work or exercise requiring movement of that portion of the body. This produces acute pain. In the hope of relieving plaintiff's back trouble, attending physicians immobilized the spine by the application of a plaster cast. This remained in place for nearly 90 days, but the hoped-for relief did not follow its removal. He then applied to defendant for disability benefits, provided in the policy, and submitted to medical examination at its request. His application was favorably acted upon and payments promptly begun. By so doing, defendant recognized then the verity of his profession of disability. These payments continued until April, 1934. None was paid thereafter, as the defendant reached the conclusion that the disability had ceased. This suit followed. Plaintiff alleges and contends that he is now permanently and totally disabled, within the coverage of the policy contract, and entitled to be paid by defendant the disability benefits therein stipulated. He sues for double the amount thereof and for $100 attorney's fees, as provided in Act No. 310 of 1910. Defendant denies plaintiff is any longer disabled, and, for this reason, disclaims any further liability to him. From a judgment in plaintiff's favor, as prayed for, defendant has appealed.

The testimony as a whole convinces us that plaintiff's disability at the time of trial below was as serious, if not more so, than it was when the plaster cast was applied. The "spurs" on the spine had probably grown some. It is conceded by all the physicians who testified that any movement of these involved vertebræ would be accompanied by pain of the character of which plaintiff complains, and that performance of ordinary manual labor would continuously require bringing these vertebræ into action. They all agree that rest and inaction are conducive to plaintiff's ailment, and the preponderance of their testimony supports his contention that the condition prevents him from following active farm life. There seems to be no cure for this kind of arthritis. Its painful effects may be only temporarily allayed.

Plaintiff is 24 years old. He was born and reared on his father's farm, and to the time of his disability performed all of the duties and labor usual for a farmer's son to perform. He states that he likes farm life and studied specially to be a farmer; that he excelled in 4-H Club work and won trips to Washington and Chicago. He testified, and it is not seriously controverted, that each time he tried to do farm work, such as picking up potatoes, etc., his back would immediately begin to pain him so

severely that he would have to quit and take to bed for relief. He is a high school graduate, but has not had any special training in work of a clerical character. His disability does not prevent him from driving automobiles or performing odd jobs which do not require heavy physical exertion or stooping over; and, because of this limited ability to work, defendant insists his case does not fall within the restricted limitations of the quoted policy provisions.

■■ To entitle plaintiff to recover, it is only necessary that his disability be of such character as continuously renders it impossible for him to follow a gainful occupation. Total disability to perform any sort of labor or service, or a condition of helplessness, is not necessary to a recovery. The policy's provisions are not as restricted in this respect as were those in many of the policies involved in reported cases where recovery was had, although the assured was able to perform some sort of labor for remuneration not a part of or incident to that which he regularly followed for a livelihood. "Gainful" is defined by Webster as profitable, advantageous, lucrative. Therefore, if the disability with which plaintiff is afflicted continuously renders it impossible for him to profitably follow the only occupation he is qualified to follow, viz., farming, he is entitled to recover. The fact that he is mentally sound and would be qualified to profitably perform clerical service, if specially trained so to do, does not unfavorably affect his right to recover.

The recent and leading case of Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52, clearly expresses the correct philosophy in cases of this character and lays down a fair and equitable rule for their determination. Justice Rogers, in that case, quoted approvingly from 7 Couch on Insurance, § 1670, p. 5769, and from 14 R.C.L. § 491, p. 1315. The latter has this to say: "The rule prevailing in most jurisdictions is that the total disability contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties, he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the 'total disability' contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner."

We recently had occasion to maturely consider the provisions in two policies, very much like those in the present case, in the cases of Cates v. Jefferson Standard Life Insurance Company, 159 So. 168, and Cates v. New York Life Insurance Company, 159 So. 172, 175. We therein said: "Applying the quoted statement from Ruling Case Law to the case at bar, plaintiff is entitled to recover. He is now unable to do 'substantially all of the material acts necessary to the prosecution' of his business 'in substantially his customary and usual manner.' His condition is such 'that common care and prudence require him to desist from transacting any such business,' in order to not seriously aggravate his condition and shorten his life."

The provisions in these two policies, however, were very much more favorable to the insurer than those in the policy herein sued on. Manuel v. Metropolitan Life Insurance Company (La.App.) 139 So. 548, and Phillips v. Mutual Life Insurance Company (La.App.) 155 So. 487, throw light upon the matters here discussed and support the conclusions we have reached that plaintiff's case has been made out.

■ Section 2, Act No. 310 of 1910, imposes upon an insurance company the duty of discharging its pecuniary obligations under a policy issued by it within 30 days from due notice and proof of disability, unless "just and reasonable grounds" exist for not doing so; and section 3 of the act is as follows: "Be it enacted, etc., That the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty, double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted."

Plaintiff sued for and recovered double the amount of disability payments due him when he filed suit, and attorney's fees. We think the lower court justified in enforcing the penalties authorized by the act. Discontinuance of payments was not

supported by "just and reasonable grounds" contemplated by this law.

It is contended by defendant that the penalty provisions of the 1910 act do not apply in a case where payments have once begun, but subsequently discontinued. We do not think this contention tenable. Defendant was given every due opportunity to determine whether plaintiff's condition had improved since payments to him began. They did investigate his case and erroneously reached the conclusion that the disability, once conceded, had ceased, but, as we have previously said, the nature and extent of the disability were even greater when payments were discontinued than when begun. In the beginning plaintiff complied with his duty under the act by furnishing to defendant acceptable proof of his right to receive the benefits, in case of total disability, vouchsafed to him by the policy. He was not required thereafter to furnish additional proof of such disability as a condition precedent to continued payments to him; and defendant, having ceased making payments without just and reasonable grounds, incurred the penalties of the statute. It was so held in Carnelious v. Columbian National Life Insurance Company, 16 La.App. 334, 134 So. 341.

We think the lower court correctly decided the issues in the case, and the judgment by it rendered and appealed from is hereby affirmed, with costs.