Plaintiff sued to recover disability benefits to which he claims to be entitled, and for the return of premiums paid, under the following provisions in each of two life insurance policies issued to him by the defendant on August 19, 1920:
"Whenever the Company received due proof, before default in the payment of premium, that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then *Page 864 
existed for not less than 60 days * * * then —
"1. Waiver of Premium. — Commencing with the anniversary of the policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the policy, the Company will not deduct the premiums so waived. The loan and surrender values provided for under Sections 3 and 4 shall be calculated on the basis employed in said sections, the same as if the waived premiums had been paid as they became due.
"2. Life Income to Insured. — One year after the anniversary of the policy next succeeding the receipt of such proof, the Company will pay the insured a sum equal to one-tenth of the face of the policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured. Such income payments shall not reduce the sum payable in any settlement of the policy. The policy must be returned to the Company for endorsement thereon of each income payment. If there be any indebtedness on the policy, the interest thereon may be deducted from each income payment."
Taking the position that defendant acted without just and reasonable grounds in refusing voluntarily to make payments to him under said disability provisions, thereby forcing him to resort to the courts for relief, plaintiff seeks to have the penalties provided in Act No. 310 of 1910 (double indemnity and attorney's fees) imposed. He alleges that on or about January 18, 1931, he became wholly and permanently disabled, within the meaning of said policy provisions, on account of chronic myocarditis and chronic bronchitis; that his physical condition grew progressively worse, and since January 17, 1932, he has been confined to his bed the greater part of the time, suffering from said diseases. He filed with defendant formal proof of claim to said benefits on February 19, 1932.
Defendant denied any liability whatever to plaintiff, and submits that the purported proof of total and permanent disability furnished by him was insufficient to bring his case within the stipulations of the policies, and therefore payments to him were refused.
We have again studied this record diligently and have reached the conclusion that our former judgment (164 So. 491), reversing the lower court and rejecting plaintiff's demands, is erroneous. He is entitled to recover disability benefits.
Plaintiff was born on June 25, 1871. The sixtieth anniversary of his birth fell on June 25, 1931. For him to recover under the limitations of the policies, it was necessary that disability become total and permanent on or before August 19, 1931; this being the anniversary of the policies nearest his sixtieth birthday. However, it was not necessary that notice of disability or proof thereof be given or submitted to defendant prior to the sixtieth anniversary of his birth. The only requirement in this regard is that defendant must be provided with proof of such disability before default in payment of a premium. We do not understand that there is now any issue on these questions.
Plaintiff became superintendent of the W.K. Henderson Iron Works Supply Company of the city of Shreveport, in January, 1914. He ceased to act in that capacity on November 10, 1931, at which time, and for some two years prior, the company's affairs were in the process of liquidation through receivers. It is because he, in a limited way, performed his duties as superintendent from January 18, 1931, to November 10, 1931, and was paid a salary therefor by the receivers, that defendant resists his claim for disability payments. If his disability only arose at the time he severed relations with the company or thereafter, he would not be entitled to recover under the restrictions of the policy contract.
Plaintiff contracted influenza in January, 1931. This confined him to bed for nearly three weeks. When his physical condition warranted, his wife carried him to Dr. C.R. Gowen, a specialist in diagnosing and treating chest conditions, for examination. He was then, and on subsequent examinations, found to be suffering with chronic myocarditis (heart disease) and chronic bronchitis. He was advised by Dr. Gowen to quit work and adopt a life of restfulness. Dr. Gowen's testimony, wholly uncontradicted except in the minor respect we shall hereinafter discuss, is clear and convincing. Its probative weight, in so far as expert testimony of this character may do so, is sufficient to establish plaintiff's contention of total disability, within the terms of the policy, as of January 18, 1931, and thereafter. It is supported *Page 865 
by an abundance of lay testimony. In the course of his testimony, Dr. Gowen said:
"Q. Chronic myocarditis; what is that? A. That means chronic changes in the heart muscle cells. This may be due to any number of causes and it occurs in middle life or past middle life and usually once it is started, it is progressive with intermittent changes of improvement by complete rest, while on slight exertion, it increases.
"Q. In Mr. Thompson's case, did it progress or get better? A. It progressed steadily.
"Q. Did he consult you in regard to going back to work? A. He did not.
"Q. Did you advise him in regard to going back to work? A. I advised him very strongly against it.
"Q. Doctor, I will ask you, after your examination, in the light of your experience, if in January, 1931, Mr. Thompson was wholly disabled by virtue of the chronic myocarditis and chronic bronchitis and a steady progress prevented him in engaging in any occupation whatsoever, for remuneration or profit? A. I considered him so and time has proven it.
"Q. You say that time has proven it? A. Yes, sir.
"Q. In what way? A. In his ability to move fast enough, walk around, and carry on the ordinary duties of life and by constant rest, has been a temporary improvement at times.
"Q. Doctor, did you rather vigorously protest about his doing any work, in rather strong language? A. Yes, sir.
"Q. What, exactly did you tell him? * * * A. Well I told him that I thought he would be foolish, with a handle on it, to exert himself by doing any work. Any heart in the condition of his would not stand any strain without impairing it. At one time, I think or twice, I refused to treat him on that account.
"Q. You told him that without cooperation, that you could not do him any good? A. Yes, sir; that was exactly it.
"Q. Would you say that in August, 1931, that he was able to do any work of any reasonable character? A. He was not. * * *
"Q. In other words, you are prepared to say that he was wholly and permanently disabled, for the rest of his life, from carrying on any occupation of a gainful profit? A. Yes, and it kills 75%."
Plaintiff suffered a complete breakdown in January, 1932, which forced him to bed for eleven months. When this case was tried on December 6, 1934, it was expressly admitted by defendant that he was then wholly and permanently disabled.
On February 15, 1932, when plaintiff filled out and signed the "insured's statement," a form blank provided by defendant, to the following question, "From what date has your disability prevented you from engaging in any occupation whatever for remuneration or profit? He answered, "11-10-31," meaning November 10, 1931. To other material questions, he answered, "see doctor's report." The doctor's report clearly disclosed that the condition of total disability at least was present in January, 1931. By answering the question as he did, plaintiff explains that he meant to say that his earning capacity totally ceased on November 10, 1931, and from that date on he received no salary or income. He offers a very reasonable explanation for having continued to render a limited measure of service to his old employer, subsequent to January 18, 1931, in spite of his physician's warning. After repeating that Dr. Gowen told him he had been a good piece of machinery, but was worn out and if he wanted to live he would have to quit work, he testified:
"* * * But like the majority of men who like to carry on, I had been with the W.K. Henderson Iron Works Supply Company so long, I thought that I should render their business what service I could, to help them and do all I could with the company. I felt like that was my duty; to stay with the ship as long as it was afloat, although I would have liked to have taken Dr. Gowen's advice and I have paid the penalty for not doing so. I did what I could to help retain the business. * * *"
Plaintiff's solicitude for the welfare of a business he had helped to build up and carry on for nearly twenty years, and his fidelity to what he deemed to be the best interest of his employer, are readily appreciated. His self-abnegation, while highly indiscreet as subsequent events proved, reflects a spirit of altruism always commendable in mankind. In our original opinion, we said:
"The record discloses that plaintiff was not as alert after January, 1931, as he had *Page 866 
been prior thereto, and, instead of visiting the foreman in the plant to give orders and directions, on many occasions he would have them come to his office; and when he would visit the different departments, and have to climb a stairway, he would be out of breath and forced to sit down to regain his composure. It also discloses that plaintiff did not have to continue his work in order to earn a living, as his salary would have been paid whether he worked or not. It is also shown that had he been a stranger to the company, he would not have been employed in the condition he was."
This is a correct summary of undisputed testimony bearing upon the points mentioned. He was only able to function as superintendent with the assistance of his associates, whose normal duties did not demand that they do so; and at serious risk of precipitating physical collapse to himself, a collapse which did overtake him a short time after leaving the company.
We do not think that had plaintiff not resumed work with his employer after the attack of influenza in January, 1931, at which time his true physical condition was ascertained, he would have experienced any serious difficulty in convincing his insurer of his right to claim and receive disability benefits under the policy provisions. The serious heart ailment indubitably created a condition which imperatively demanded that if plaintiff wished to prolong his life and not experience a breakdown which would reduce him to a condition of helplessness, he should abstain from the performance of any service or labor for a livelihood. Now, can it be said in reason that because of his imprudence, in the light of the facts and circumstances of the case, he has forfeited a right to which he was clearly entitled prior to the resumption of work after January, 1931? We do not think so.
Certainly it may correctly be said that from and after January, 1931, plaintiff was unable to do substantially all the material acts necessary to the prosecution and discharge of the duties of his employment "in substantially his customary and usual manner." His condition was such that "common care and prudence required him to desist from transacting any such business," in order to not seriously aggravate his condition and shorten his life. By not observing the rule here laid down, he, as they say, "has paid the price" of his imprudence. Crowe v. Equitable Life Assurance Soc., 179 La. 444, 154 So. 52; Boughton v. Mutual Life Insurance Co., 183 La. 908, 165 So. 140; Cates v. New York Life Insurance Co. (La.App.) 159 So. 172; Smith v. Mutual Life Insurance Company, 165 So. 498, recently decided by this court.
We do not think the facts of this case warrant the imposition of the penalties of Act No. 310 of 1910. Plaintiff's answer to the question in the "insured's statement," above referred to, and the fact that after convalescing from the flu in January, 1931, he returned to work and was thereafter paid a salary, furnished the insurer "just and reasonable grounds such as to put a reasonable and prudent man on his guard," for not amicably complying with his demands. Any prudent business man, with the facts before him, would conclude that prior to November 10, 1931, plaintiff was not disabled to the extent that he was entitled to the benefits provided in the policies. Penal statutes should be strictly construed always, and their drastic provisions enforced only when the facts clearly warrant such being done.
Plaintiff is entitled to recover $264.04, the amount of premiums paid by him, and one-tenth of the face of the two policies, or $300.
For the reasons herein assigned, the judgment appealed from is amended by reducing the amount thereof to $564.04, and, as thus amended, it is affirmed, with costs. *Page 867