## LANDRY v. MUTUAL LIFE INS. CO. OF NEW YORK.

### Civil Action No. 889.

District Court, W. D. Louisiana, Opelousas Division.

July 19, 1944.

Voorhies & Labbe, of Lafayette, La., for plaintiff.

Montgomery, Fenner & Brown, of New Orleans, La., for defendant.

PORTERIE, District Judge.

A motion to dismiss because the insured had furnished proof of total and permanent disability too late, that is, long after having become sixty years of age, will be found overruled with reasons at D.C., 54 F.Supp. 356. This previous opinion becomes a part of the present opinion on the merits.

### Findings of Fact.

The testimony of the various witnesses shows, without any contradiction, that in 1929 the plaintiff owned a 230-acre sugar-cane farm, operated on the pay system, and personally managed. The plaintiff was his own overseer and paid the field laborers, attended to the work stock and the farm implements, milked the cows, raised a vegetable garden for family use, did his own repair work in a small blacksmith shop, and, in general, did all the work common to the life of a farm operator.

He was physically active from early morning until late at night, doing work which required real physical exertion. A small country store or commissary was run by the plaintiff in which an average stock of approximately $300 was carried. Essentially, therefore, plaintiff was a farmer.

The plaintiff secured a life insurance policy from the defendant which carried total and permanent disability benefits. The policy reads in part as follows:

"Total Disability. Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation.

"Permanent Disability. Total disability shall, during its continuance, be presumed to be permanent;

"(a) if such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the insured; or

"(b) if such disability has existed continuously for ninety days."

The plaintiff was going along as above told until 1936, when he was stricken by disease which he and other witnesses testify prevented him from continuing the active management and operation of his farm and forced him to employ his son, who at the time was working in Texas, to replace him. From the inception of his illness until May, 1938, he was treated by Dr. G. R. Delaureal, now deceased, and his condition did not improve; in May, 1938, he then employed Dr. Albert R. Corne, a witness in this case, who has since been his personal physician and who has been in constant touch with the plaintiff's physical condition.

Dr. Corne testifies that when he first examined the plaintiff in May, 1938, he found him to be suffering with acute pleurisy, chronic bronchitis, multiple neuritis and prostatitis, or diseased and hyperthrophied prostate gland; further says that in his condition, the plaintiff could not do any of the duties incident to his occupation of farming, and could not do any work which required him to be physically active.

The subsequent history of plaintiff's various illnesses may be summarized as follows: His pleurisy was cured; his chronic bronchitis improved under treatment, but has continued to recur and require medical attention, his last attack having occurred about two months before the trial; his neuritis has never been controlled and at the time of the trial, the plaintiff was receiving medical treatment by way of injections; and finally, his prostate trouble was treated by Dr. Corne with massaging on frequent occasions, which only afforded him temporary relief. He made four visits to Dr. Brinkley Hospitals at Little Rock, Arkansas, and Del Rio, Texas, in 1940, 1941 and 1942, seeking a cure without undergoing an operation. He was treated by two other physicians who are presently in the Military Service.

In July, 1942, the plaintiff underwent a prostatectomy by Dr. Hugh Beacham, a specialist of New Orleans, and Dr. Corne. The operation afforded him some relief, but did not produce a complete cure. Remaining portions of the prostate gland continued to become infected and periodically emitted pus.

Dr. Corne testified that plaintiff has continuously, since May, 1938, and up to this time, been totally unable to attend to his work as an active farm operator as he was accustomed to do prior to his sickness; further, that plaintiff has not, without injury to his health, been able to do any work at any time during that period which would require continuous physical activity.

Dr. R. O. Young, who examined the plaintiff's prostate gland about three years ago and who has remained closely acquainted with his physical condition, corroborated Dr. Corne's testimony as to plaintiff's continuous disability to the present time.

The lay witnesses, who included the members of two near-by sugar factories and several neighboring farmers, testified that prior to plaintiff's illness in 1936, he had been in active charge of his farm and performed the duties previously described, but that since 1936 he had been forced to discontinue the operation of his farm and had not done any work. In July, 1943, one year after the operation, to give Mr. Landry physical exercise, Dr. Corne advised him to try work. Dr. Corne said that while he thought that some work would help Mr. Landry, it did not turn out that way, and that the work injuriously affected Mr. Landry's health.

The defendant did not produce any witnesses to contest plaintiff's disability and has not tried to show that the plaintiff is not totally disabled.

In March, 1943, the plaintiff addressed a letter to the defendant company, requesting that blank forms be furnished for the purpose of filing a proof of claim on account of his existing total and permanent disability; the defendant refused to furnish these forms on the ground that the insured did not have the right under the terms of his policy to file proof of claim for total and permanent disability after he had attained the age of sixty years; the plaintiff thereupon, in accordance with the provisions of Act No. 310 of 1910, filed informal proof of claim, accompanied with a statement of his attending physician, showing his total and permanent disability, and demanded payment; at the same time, notice was served on the defendant that upon its failure to pay the benefits claimed, plaintiff would seek to recover the penalties stipulated in the Act; and defendant refused payment.

When suit was filed, defendant moved to dismiss on the ground that the petition did not state a cause of action in that proof of claim had not been filed prior to August 4, 1942, the date that insured had attained the age of sixty. The court overruled the defendant's motion and rendered

a written decision ascribing reasons for the ruling. See 54 F.Supp. 356, supra.

The testimony shows that the plaintiff did not notify the company of his disability until March, 1943, for the reason that he did not realize that his policy contained such a total and permanent disability provision. Plaintiff testified that when he took out this policy in 1929, he was mainly interested in buying life insurance and for that reason he soon forgot that his policy contained disability benefits. Plaintiff's education is limited, as he only went to the fifth grade in school.

The accrued amount of disability benefits due at the present time, from May, 1938, to July, 1944, a period of seventy-five months, is $4,125. This total sum is composed of $50 per month for sixty months, and $75 per month for fifteen months.

Since the inception of his disability, plaintiff has paid four annual premiums of $246.15 and two annual premiums of $218.-95, or a total amount of $1,422.50. This amount, as a matter of law, is to be refunded to the plaintiff.

Counsel for plaintiff and defendant stipulated at the trial that the sum of $750 would be a reasonable award as attorneys' fees in the event that the court applied the statutory penalties.

## Conclusions of Law.

Plaintiff has not been able, at any time since May, 1938, to perform the substantial and material duties of his occupation of farming in the usual and customary manner, without serious injury to his health. Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52; Cates v. New York Life Insurance Company, La. App., 159 So. 172; Boughton v. Mutual Life Insurance Company, 183 La. 908, 165 So. 140; Smith v. Mutual Life Insurance Company, La.App., 165 So. 498; Link v. New York Life Insurance Company, La.App., 194 So. 118; Strauss v. New York Life Insurance Company, 204 La. 202, 15 So.2d 61; Metropolitan Life Insurance Company v. Pitcher, 5 Cir., 108 F.2d 621.

Plaintiff has not been and is not able to do physical work of any other kind or character, and, further, has not been and is not able or competent to do any mental or clerical work of any remunerative character, during the period from May, 1938, to the present date.

The eleven headnotes, drafted by the publishers and approved by us, in 54 F.Supp. 356, are entered here and now as eleven additional conclusions of law, and the whole opinion, containing the findings of fact and the jurisprudence in support, is likewise and now made a part of this opinion as if written herein, in extenso.

We have read the decision of the Supreme Court of Illinois, May, 1944, entitled Moscov v. Mutual Life Insurance Company, 56 N.E.2d 399, rendered since our decision overruling the motion to dismiss of the defendant. Our previous reasoning differentiating the instant case from the Birnbaum case, and others, applies to this Moscov case.

From the Moscov case, we quote:

"And, in Lucas v. John Hancock Mutual Life Ins. Co., 116 Pa.Super. 298, 176 A. 514, 515, the court said: 'The very purpose of the due proof clause is that prompt notice may be given, in order that the company may have an opportunity to make a fair investigation of the claim. The unfairness of plaintiff's position is best established by the present claim, in asserting a disability that had existed for more than four years prior to his filing proofs of his disability.'"

If such be the underlying reason for the rule, the instant case is a decided exception, for the continual sickness and the physical disabilities of the plaintiff were fully proved, closely and connectedly developed through the years. No lack of opportunity to the defendant company to have secured the facts because of the delay of plaintiff in making the claim is shown.

The plaintiff has invoked the penalty provided by Act No. 310 of 1910, which provides that if an insurance company shall, without just or reasonable grounds, fail or refuse to pay to an insured the benefits of his policy, it shall be condemned to pay double the amount due under the terms thereof, together with attorneys' fees.

"Penalties in civil actions are not favored by the courts, and should not be imposed except in cases that are clear and free from doubt. It cannot be said that plaintiff's contentions in this case were wholly unfounded or unreasonable." Massachusetts Protective Ass'n, Inc., v. Ferguson et ux., 168 La. 271, 121 So. 863, 866.

We think the point of law contained in the motion to dismiss filed by the defendant company sufficiently serious to withhold the imposition of the penalty in this case. The question of law, we believe, is to some degree res nova in Louisiana and, certainly, reasonable men may differ on it. Smith v. Washington Nat. Ins. Co., La.App., 178 So. 691. Generally, in support, see Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464, 45 A.L.R. 1521; Dance v. Southern Surety Co. of New York, 16 La.App. 373, 134 So. 725; Crowe v. Equitable Life Assurance Society, supra; Thompson v. New York Life Ins. Co., La.App., 166 So. 863.

Judgment will be signed for the plaintiff, free of the imposition of penalties, in accordance with the above opinion.